**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

| | |
|---|---|
| GREGORY RANDOLPH, *et al.* | : |
| | : |
| Plaintiffs, | : |
| v. | : Civil Action No. 8:13-cv-01696-PWG |
| | : |
| POWERCOMM CONSTRUCTION, INC., *et al.* | : |
| | : |
| Defendants | : |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION,**
**INVALIDATION OF "OPT-OUT" FORMS, AND REQUEST FOR SANCTIONS**

Defendants, PowerComm Construction, Inc., and David Kwasnik Sr. (collectively,

"PowerComm"), by counsel, and pursuant to the Court's Order entered on August 6, 2014[1],

hereby oppose Plaintiffs' Motion for Preliminary Injunction, Invalidation of "Opt-Out" Forms,

and Request for Sanctions ("Motion").   Plaintiffs' legal authority is misstated or invalid, and

PowerComm and its counsel have acted legally and appropriately at all times.   The feverish,

overwrought, and legally-groundless Motion, supported by fraudulent affidavits, itself rises to a

Rule 11 violation.

**A.      STANDARD – Preliminary Injunction is an extraordinary remedy.**

A preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-

reaching power to be granted only sparingly and in limited circumstances."  *Ledo Pizza System,*

*Inc. v. Singh*, 983 F.Supp.2d 632, 638 (D. Md. 2013), quoting *MicroStrategy Inc. v. Motorola,*

*Inc.,* 245 F.3d 335, 339 (4th Cir.2001) (internal quotation marks omitted).  Because issuing a

---

[1]      Pursuant to the August 6, 2014 Order, PowerComm was provided three business days to
oppose plaintiffs' massive Motion, rather than the 14 days stipulated by the Local Rules.

preliminary injunction "requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way," "[t]he danger of a mistake in this setting is substantial." *Ledo Pizza System, Inc.,* 983 F.Supp.2d at 638, quoting *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.,* 17 F.3d 691, 693 (4th Cir. 1994) (internal quotation marks omitted).

To obtain a preliminary injunction, the movant must demonstrate that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities favors him; and (4) an injunction is in the public interest.  The movant must show more than a "grave or serious question for litigation"; instead, he bears the "heavy burden" of making a "clear showing that [he] is likely to succeed at trial on the merits."  *See Ledo Pizza System, Inc.,* 983 F.Supp.2d at 638, citing *Real Truth About Obama, Inc. v. Fed. Election Comm'n,* 575 F.3d 342, 351 (4th Cir. 2009), *vacated on other grounds,* 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764, *reinstated in relevant part on remand,* 607 F.3d 355 (4th Cir. 2010) (*per curiam*).  All four elements must be present.  *See Ledo Pizza System, Inc.,* 983 F.Supp.2d at 638. Here, none are.

**B.      There is no basis to limit party to party communications here, because the class has not been certified and PowerComm (and PowerComm's counsel) are permitted to speak directly with putative class members regarding settlement.**

In the Memorandum accompanying the Motion, plaintiffs cite on this point only a single case, from the U.S. District Court, Southern District of West Virginia, which cites another case from the U.S. District Court, Southern District of Alabama.  *See Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction, Invalidation of "Opt-Out" Forms, and Request for Sanctions ("Memo"), p. 10.*  But one wonders if plaintiffs actually comprehended the case.  There, in *The Kay Co., LLC v. Equitable Prod. Co.,* 246 F.R.D. 260

2

(S.D.W. Va. 2007), the court held that defendants' communications with putative class members was *not* contrary to the spirit and purpose of agreement contained in report of parties' planning meeting; that plaintiffs were *not* entitled to an order limiting defendants' communications with putative class members; and, that defendants' communications with putative class members *did not* violate West Virginia Rule of Professional Conduct prohibiting *ex parte* communication. The court also stated that where communication is limited:

> The result should be "a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances," and the court must give "explicit consideration to the narrowest possible relief which would protect the respective parties."

*Id.* at 262, citing *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 (1981).

Moreover, the case also noted that generally courts have recognized that a defendant may discuss settlement offers with putative class members prior to class certification. *The Kay Company, LLC,* 246 F.R.D. at 263 (and cases cited therein).  And this is the law in Maryland. *See generally, Frazier v. Castle Ford, Ltd.,* 430 Md. 144, 59 A.3d 1016 (Md. 2013).  Plaintiffs' other additional cited authority (*see Memo, p. 16*) also acknowledges that counsel may directly communicate with putative class members before the class has been certified.  *See Guifu Li v. A Perfect Day Franchise, Inc.,* 270 F.R.D. 509, 517 (N.D. Cal. 2010), citing *Gulf Oil, supra,* 452 at 99-100 ("Before a class is certified in a class action, counsel for both plaintiffs and defendants may communicate with the putative class, *ex parte,* about the lawsuit.").

Thus, *The Kay Co., LLC* expressly corroborates that PowerComm's conduct was proper. This action has not been certified as a class action.  It has been only conditionally certified, and there is a stark difference.  "[T]he standard to determine whether plaintiffs are "similarly situated" at the decertification stage is "much more stringent" than the standard applicable to the initial notice stage of a collective action."  *Butler v. DirectSAT USA, LLC*, 876 F.Supp.2d 560,

3

573 (D.Md. 2012); s*ee also this Court's Memorandum Opinion (ECF No. 50), p. 22.* Plaintiffs have placed before this Court authority that makes clear PowerComm was permitted to discuss settlement offers with the putative class members. Indeed, the cited authority even holds that PowerComm's counsel was permitted to do so as well (though he did not).

**C.    PowerComm's counsel has not violated any ethical strictures.**

Despite plaintiffs' heated outrage, the actions complained-of are completely permissible. As previously provided in opposition to Plaintiffs' Consolidated Motion and Supporting Memorandum for an Expedited Briefing and Hearing Schedule (*ECF No. 90),* in Maryland, "[i]t is true, of course, that notwithstanding the existence of a contingent fee contract, **the client may, in good faith, compromise, settle, or dismiss his cause of action without the attorney's intervention, knowledge, or consent**." *Ronald M. Sharrow, Chartered v. State Farm Mut. Auto. Ins. Co.*, 306 Md. 754, 766, 511 A.2d 492 (Md. 1986), citing *Maddox v. District Supply, Inc.,* 222 Md. 31, 158 A.2d 650 (1960); *Palmer v. Brown,* 184 Md. 309, 40 A.2d 514 (1945); *Boyd v. Johnson,* 145 Md. 385, 125 A. 697 (1924) (emphasis added). Additionally, in Maryland, it is well established that defendants may directly communicate and tender payment for compensatory damages to putative plaintiffs before the class action has been certified. *See generally, Frazier, supra,* 430 Md. 144, 59 A.3d 1016 (Md. 2013). As also shown, before a class has been certified, plaintiffs' cited authority permits counsel for either party to directly communicate with putative class members. *See Guifu Li, supra,* 270 F.R.D. at 517, citing *Gulf Oil, supra,* 452 at 99-100.

So plaintiffs truly reach to find grounds for their accusations. And they reach too far; this Court's Local Rule 701 provides that a lawyer must be "familiar with the Maryland Lawyers' Rules of Professional Conduct, the Federal Rules of Civil Procedure, the Federal Rules of

Evidence, the Federal Rules of Appellate Procedure, and these Local Rules; is (to the extent relevant to his or her area(s) of practice) familiar with the Federal Rules of Criminal Procedure, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules…." *L.R. 701(1)(a).* The Local Rule says nothing about the Kansas Code of Professional Responsibility and American Bar Association (ABA) Formal Opinions. *See Memo, p. 11.*

Plaintiffs posit defense counsel has violated MRPC 4.2(a) and MRPC 8.4(a). *See Memo, p. 10.* They can find no controlling case remotely on-point, so they invoke an ABA Opinion, a Kansas case, a case from the U.S. District Court, Southern District of New York, and a Massachusetts Bar opinion. *See Memo, pp. 10-11.* The ABA is a voluntary association, of which defense counsel is not a member. Further, the cited opinion is inapposite since it does not touch on established law which permits communication with putative class members before a class has been certified. In the Kansas case (not an FLSA case with a certified class), an attorney prepared a release related to back child support. This is factually distinguishable on multiple levels, and even there the attorney was merely censured. *See In re Marietta,* 569 P.2d 921 (Kan. 1977).

In the New York case (an age discrimination case), the court held that the attorney did not circumvent disciplinary rules by "causing" the client to tape conversations with corporate employees. Even there, on the issue where a client directly asks his or her attorney whether he should approach a represented adversary, the court recognized that "[according to the New York City Bar Association Opinion, the lawyer may inform the client that such communication is not prohibited as long as the client independently decides to undertake the contact." *Miano v. AC & R Advertising, Inc.,* 148 F.R.D. 68, 83 (1993). That is the situation here.

Finally, plaintiffs rely upon a Massachusetts Bar Opinion. The full text of this Opinion is

attached hereto.  *See Exhibit A.*  There, the issue was nothing like an FLSA case where the parties were directly negotiating settlements with putative class members before the class action had been certified.  Rather, the inquiry "involve[d] settlement negotiations in which the lawyers ha[d] been involved and the inquiry suggest[ed] that the lawyer and [defendant] have worked out a settlement position."  Again, these are not remotely our facts.  Here, the lawyers were never involved in any settlement negotiations.

In short, none of plaintiffs' cited authority on this point brings any relevant law to bear. In contrast, Maryland law and *The Kay Co., LLC, supra,* and *Guifu Li, supra,* decisions make clear that neither PowerComm nor its counsel violated *any* ethical considerations or law.

**D.      Plaintiffs have submitted false and coerced declarations in support of their Motion.**

Here, the Complaint was filed on June 12, 2013, as to Gregory Randolph alone.  The majority of the plaintiffs, sixty-two (62) of the sixty-four (64) did not opt-in until at the earliest April 28, 2014[2].  *See ECF No. 57.*  Thus, on August 12, 2014, when this Court hears argument on the Motion,  sixty-two (62) of the sixty-four (64) plaintiffs would only be entitled to *at most* wages from April 28, 2011 (three years before the April 28, 2014 opt-in date), a span of three years, three months and two weeks, or approximately 170 weeks.  In any event, assuming *arguendo* these were not the facts, and further assuming the FLSA's three-year statute of

---

[2]      *See e.g., Lee v. Vance Executive Protection, Inc.,* 7 Fed.Appx. 160, 166-67 (4th Cir. 2001).  An FLSA collective action is deemed commenced for an individual plaintiff "on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court."  29 U.S.C.A. § 256(a) (West 1998).  For plaintiffs not named in the original complaint, a collective action under the FLSA commences "on the subsequent date on which [the plaintiffs'] written consent is filed in the court."  29 U.S.C.A. § 256(b); *see also Songu Mbriwa v. Davis Memorial Goodwill Indus.,* 144 F.R.D. 1, 2 (D.D.C. 1992) ("Until a plaintiff, even a named plaintiff, has filed a written consent, [ ]he has not joined in the class action, at least for statute of limitations purposes."

limitations applied as opposed to the two-year statute of limitations,[3] and that plaintiffs presently were working for PowerComm at the time of the August 12, 2014 hearing, plaintiffs would only be entitled to wages from June 12, 2010 (three years before the Complaint was filed), a time span of four (4) years, 2 months; or, stated differently approximately 216 weeks[4].  Notwithstanding, as shown below, plaintiffs have submitted false declarations and inconsistent court filings falsely claiming they are entitled to much more compensation than what they are owed.  Further, it is important to note, that of the 24 opt-out plaintiffs, only 7 of them worked for PowerComm when they opted-out.  Thus, for the majority of opt-outs, nearly all, there could be no employment coercion (as claimed under oath), because they were not working for PowerComm when they opted-out.

### 1.       George Miles

George Miles submitted under oath and the penalties of perjury that he was entitled to $29,500.00 of unpaid overtime.  *See Memo, Ex. 1.*  Moreover, he claimed he is owed compensation for 295 weeks of work.  *See id., ¶ 5.*  This is false as he at most would be owed for approximately 170 weeks at the time of the hearing, assuming PowerComm presently employed him.  Equally troubling, approximately  two weeks ago, plaintiffs filed an Amended Initial Disclosure (ECF No. 86), where they asserted George Miles's was owed only $7,066.92, a difference of more than $20,000.00, based on 153 weeks of work, 9.5 hours of overtime a week,

---

[3]       Whether a violation is willful impacts the length of the appropriate limitations period under the FLSA and can impact the computation of unpaid overtime compensation under the FLSA.  The FLSA provides two potential limitations periods.  For non-willful FLSA violations, a two-year statute of limitations applies. 29 U.S.C. § 255(a).  When the violation is willful, a three-year statute of limitations applies.  *Id.; see Hurd v. NDL, Inc.*, Civil No. CCB–11–1944, 2012 WL 642425, at *6 (D. Md. February 27, 2012).

[4]       In reality, only plaintiff Gregory Randolph would be entitled to claim 216 weeks, 62 of the 64 plaintiffs would be able to claim at most 170 weeks.

and an overtime rate of $14.82 per hour.  *See Plaintiffs' Amended Rule (2)(a)(1) Disclosure,*

*(ECF No. 86), p. 5.*

  **2.**    **Lamar Young**

  Lamar Young asserted he was entitled to $2,265.00 of unpaid overtime.  *See Memo, Ex.*

*2.*  However, applying the math, $4.88 per hour times 2.5 hours per week times 216 weeks equals

$2,635.20.  Moreover, approximately two weeks ago plaintiffs asserted that he was owed

$5,216.25 based upon 214 weeks of work, 5 hours of overtime per week at $14.63 per hour.  *See*

*ECF No. 86, p. 5.*  Young's false allegations as to coercion are addressed below in

PowerComm's evidence.

  **3.**    **Rodney Brooks**

  As shown below in PowerComm's evidence, the declaration of Rodney Brooks was

obtained by deceit and coercion from plaintiffs' counsel.

  **4.**    **Shanina Washington**

  In her declaration, she asserts that she is entitled to 161 weeks of wages at a pay

differential of $4.31 per hour for 2.5 hours per week.  *See Memo, Ex. 4.*  However, plaintiffs

previously represented that she worked only 159 weeks.  *See ECF No. 86, p. 5.*  Washington's

false allegations of coercion are addressed below in PowerComm's evidence.

  **5.**    **Samuel Hegwood**

  In his declaration, he asserts he is entitled to $57,590.00 based on 443 weeks of overtime

at a pay differential of $6.50 per hour for an average of 20 hours per week.  *See Memo Ex. 5.*  As

shown, at most he would be entitled to 170 weeks of overtime at the time of the hearing.  Again,

equally troubling, plaintiffs recently represented Hegwood was only entitled to $7,066.92, a

difference of more than $50,000.00, based on 137 weeks of overtime, 9.35 hours overtime per

week.  *See ECF No. 86, p. 4.*

**6.      Robin Melton**

Robin Melton has asserted in her declaration that she is owed $47,040.00 in unpaid overtime based upon 448 weeks of overtime.  *See Memo, Ex. 6.*  She has claimed further she worked 20 hours of overtime each week.  *See id.*  She also has claimed her pay differential was $8.00 per hour.  *See id.*  However, as shown, at most, at the time of the August 12, 2014 hearing, she would be entitled to approximately 170 weeks.  Additionally, plaintiffs recently represented she was owed a staggering $70,560.00, a difference of more than $20,000.00, and that her pay differential was $9.50 per hour ($31.50 - $21.00).  *See ECF No. 86, p. 5.*

**7.      Gregory Eubanks**

In his declaration, he has claimed he is entitled to 221 weeks of wages, and has claimed he is owed $1,050.00.  *See Memo, Ex. 7.*  At most, he would be entitled to 170 weeks.  Further, plaintiffs recently asserted he was owed $11,050.00 (*see ECF No. 86, p. 4),* a $10,000.00 discrepancy.

**8.      Nicole Raviele**

As plaintiffs counsel's law clerk, and as further addressed below, Nicole Raviele's conduct was deceitful and she coerced and deceived Rodney Brooks into signing his declaration as attached to plaintiffs' Memorandum.

**9.      Antonio Wall**

In his declaration, he claims he is owed $2,210.00.  *See ECF No. 96-2, ¶ 5.*  Approximately two weeks ago, plaintiffs asserted he was owed $7,066.92, or almost $5,000.00 more.  *See ECF No. 86, p. 5.*  Further, in his declaration, he states he worked 45 hours per week, but then preposterously claims 20 hours of overtime per week.  *Compare ECF No. 96-2, ¶ 4 and*

*¶ 5.*

**E.    PowerComm's evidence shows there was no coercion.**

**1.    Anthony Wills, Justin Foster, Leslie Gross and Lavelle Gant**

Each has declared that they "read and signed an OPT Out Form and Settlement Agreement with PowerComm willingly and completely understood the terms of the agreement. [They were] at no point threatened to sign. At no time [were they] ever contacted by PowerComm's attorneys and all negotiations were with PowerComm directly.

*Exhibits B-E attached.*

Mr. Gant also states that Lamarr Young was not threatened into signing the opt-out form:

I was also there when Lamarr Young was signing his Opt Out form and Settlement Agreement given to him by Arsim (Salihu). I was there with Jame Puryear, and at no time was Lamarr threatened to sign, he was happy to get his check and I saw him read it and sign it, without a problem.

*Exhibit E.*

**2.    Arsim Salihu, PowerComm's Supervisor**

Mr. Salihu has corroborated that Lamarr Young and Rodney Brooks were not threatened about their employment. *See Exhibit F attached.* Mr. Salihu also contradicts Shanina Washington's assertion that she was threatened in her employment. *See id.* Mr. Salihu also states he never conducted any company meeting to have people sign-opt out forms. *See id.* Mr. Salihu also confirmed that there are still opt-in plaintiffs presently employed by PowerComm who do not feel their jobs are in jeopardy. *See id.*

**3.    James Puryear, PowerComm's Supervisor**

Mr. Puryear confirmed that neither Lamarr Young nor Shanina Washington were threatened to sign the opt-out form. *See Exhibit G attached.* He also confirmed that "at no time has anyone been pressured into signing anything or threatened to lose their jobs." *Id.* He further confirmed that George Miles, Gregory Eubanks and Ezra Calloway, were not employed by

10

PowerComm, and that they had to complete drug tests and submit an employment application before they could become employed again. *See id.*

### 4.   Laura Kwasnik, wife of PowerComm's President

Ms. Kwasnik roundly refutes Shanina Washington's assertion that Ms. Kwasnik was trying to have plaintiffs' lawyer disbarred. *See Exhibit H.* She also confirmed that Shanina Washington did not advise plaintiffs' counsel that she was owed overtime for every week she worked seeing there are "rain days [and] snow days" (along with Holidays). *Id.* She confirmed that Shanina Washington initiated contact to settle her case, and that Shanina Washington was not threatened to opt-out. *See id.*

### 5.   Rodney Brooks

Mr. Brooks attests that plaintiffs counsel's representative Nicole Raviele coerced him into signing his declaration that plaintiffs have submitted attached to their Memorandum. *See Exhibit I.* Raviele led Mr. Brooks to believe that he would lose his employment with PowerComm, if he did not sign plaintiffs' declaration. *See id.* Mr. Brooks also confirms that at no time did anyone from PowerComm threaten his job. *See id.* He further has stated that he signed the opt-out form and received compensation for all overtime due. *See id.*

### 6.   David Kwasnik Sr., PowerComm's President

Mr. Kwasnik has presented a lengthy declaration that specifically details the communications with the opt-in plaintiffs. *See Exhibit J.* All checks negotiated by the opt-out plaintiffs are attached as *Exhibit K.* Clearly, no one was threatened or coerced into opting out of this lawsuit.

### 7.   David Kwasnik Jr., PowerComm's VP of Human Resources

He has confirmed that PowerComm did not initiate contact to settle with the opt-out

plaintiffs.  *See Exhibit L.*  Rather, (Roosevelt) Eunise Melton contacted him to see if he could

speak with his father, David Sr., about the lawsuit.  *See id.*  After speaking with his father, he

provided his father's contact information to Melton.  *See id.*

**F.     PowerComm counsel's conduct.**

In early May, 2014, defense counsel received information from PowerComm that an opt-

in plaintiff had contacted PowerComm to see if he could receive money for his overtime claims.

PowerComm directed defense counsel to draft necessary paperwork so that PowerComm could

settle this case with the opt-in plaintiff who was requesting settlement and payment.  At that

time, the case had not been certified as a class action.  Defense counsel drafted the attached Opt-

Out Notice and Settlement Agreement (attached as Exhibit M), and provided it to PowerComm

on May 8, 2014.  On July 31, 2014, defense counsel received twenty-three (23) signed opt-out

notices and settlement agreements.  On August 1, 2014, defense counsel filed the opt-out notices

with the Court.  On August 4, 2014, defense counsel received one (1) more signed out-opt notice

and settlement agreement, and filed it with the Court that day.  As discussed *supra,* defense

counsel violated no Maryland law or ethical rule.

**G.     Plaintiffs have not met their burden for obtaining a preliminary injunction.**

Plaintiffs argue that defendants' conduct is almost certainly a violation of the FLSA anti-

retaliation provision.  *See Memo, p. 12.*  But their evidence is a sham.  PowerComm did not

coerce *any* opt-in plaintiff to opt-out of the litigation.  Only a few of the opt-out plaintiffs are

even employed by PowerComm, and most of these that are have expressly asserted there was no

coercion.  Those few that have claimed coercion or fear of being terminated have submitted

facially false declarations.  In any event, plaintiffs assert that settlement negotiations should be

held between and among competent counsel.  But, plaintiffs' own cited authority shows that, in

this FLSA action that has not been certified, this is misplaced.  *See The Kay Co., LLC, supra*, 246 F.R.D. 260; *Guifu Li, supra,* 270 F.R.D. 509; and in Maryland, *see generally, Frazier, supra,* 430 Md. 144, 59 A.3d 1016.

Regarding equitable considerations, plaintiffs assert that an Order precluding PowerComm from engaging in *ex parte* communications with plaintiffs would result in no burden whatsoever.  *See Memo, p. 12.*  But as before, this argument is belied by their cited authority.  *See The Kay Co., LLC, supra,* 246 F.R.D. 260 at 262, citing *Gulf Oil Co., supra,* 452 U.S. at 102.  As *The Kay Co., LLC* case has stated, any restriction should be "a carefully drawn order that limits speech as little as possible."  Further, a blanket communication preclusion with putative class members before the class has been certified is directly counter to Maryland law (*Frazier, supra)* and plaintiffs' authority (*Guifu Li, supra).*

Plaintiffs argue that they will be irreparably harmed without the issuance of an injunction. *See Memo, p. 13.*  Plaintiffs' assertion that PowerComm has induced at least nine (9) plaintiffs into signing opt-out agreements under false pretenses or threats of retaliation is false.  As shown, 17 out of the 24 opt-out plaintiffs did not even work for PowerComm when they opted out.  *See Exhibit J, ¶ 10.*  As a matter of common sense, there could be no coercion as to them.  It is troubling that plaintiffs and their counsel will submit manufactured and false evidence to gain an unfair tactical advantage in this case.  The only "irreparable harm" here has already taken place; that PowerComm has had to spend unnecessary time and fees to defend itself from this specious Motion, and the Court's valuable resources have been spent in having to address it; no plaintiff who actually wishes to remain in this case would be affected in any way by the absence (or even presence) of a preliminary injunction.

Finally, fatal to plaintiffs' motion for preliminary injunction is their acknowledgment that

the likelihood of the merits element is "inapplicable." *See Memo, p. 13.* This interesting

analysis elides the fact that the likelihood is almost nil. Regardless, the law is clear that all four

elements to obtaining a preliminary injunction "must be present." *Ledo Pizza System, Inc.,*

*supra,* 983 F.Supp.2d at 638. Accordingly, given plaintiffs' candid admission, the motion for

preliminary injunction should be denied on this basis alone.

**H.      Plaintiffs' motion for sanctions is contrary to the Rules, belied by the facts, and
         unsupported by relevant authority; as such, the Court should consider imposing
         sanctions on plaintiffs.**

Local Rule 105 provides that Motions for Sanctions shall:

a.   *Not be Filed as a Matter of Course*

The Court expects that motions for sanctions will not be filed as a matter of course. The
Court will consider in appropriate cases imposing sanctions upon parties who file
unjustified sanctions motions.

b.   *Responses Required Only Upon Court Order*

Unless otherwise ordered by the Court, a party need not respond to any motion filed
under Fed. R. Civ. P. 11 or 28 U.S.C. § 1927. The Court shall not grant any motion
without requesting a response.

*L.R. 105.*

Despite the admonition in Local Rule 105(a), plaintiffs devote four pages arguing that

sanctions are appropriate here. *See Memo, pp. 15-18*[5]. But their arguments, like the rest of the

Motion, are still unsupported in the law. In *First Mariner Bank v. Resolution Law Group, P.C.,*

Civ. No. MJG-12-1133, 2014 WL 1652550 (D. Md. Apr. 22, 2014) (*see Memo, p. 15*), the court

granted the sanction of default against the defendants when defendants failed to comply with

three (3) separate discovery orders, were monetarily sanctioned for $23,221.00, and subsequently

spoliated evidence, continued to fail to respond to interrogatories, and failed to adequately

---

[5]     The fact that plaintiffs' have characterized the sanctions motion as a "request" is merely
form over substance.

prepare defendants' Rule 30(b)(6) designee for deposition.  Here, PowerComm has not violated *any* order from this Court, and plaintiffs are not seeking a default judgment against PowerComm.

Similarly, *Projects Mgmt. Co. v. Dyncorp Int'l LLC,* 734 F.3d 366 (4th Cir. 2013) has no relevance here.  *See Memo, p. 15.*  In *Dyncorp Int'l, LLC,* the Fourth Circuit clearly stated that the enumerated factors related to what must be considered by the court before "exercising its inherent power to dismiss a case."  *See Dyncorp. Int'l, LLC,* 734 F.3d at 373.  PowerComm has filed no case that plaintiffs are seeking to dismiss.

Next, in seeking to have the opt-out forms invalidated, plaintiffs rely upon *Wang v. Chinese Daily News, Inc.,* 623 F.3d 743, 757 (9th Cir. 2010), *cert. granted, judgment vacated,* 132 S. Ct. 74, 181 L.Ed.2d 1 (U.S. 2011), to assert the "district court did not abuse its discretion to invalidate opt-out forms and restrict defendant's ability to communicate with class members." *Memo, p. 16.*  Whether or not this is true, that ruling no longer has any merit -- the judgment was vacated by the U.S. Supreme Court as reflected by the attached copy of the Opinion.  *See Exhibit N attached.*

Defendants also rely upon *Guifu Li, supra,* 270 F.R.D. 509, for the assertion that opt-out forms prior to class certification should be invalidated when they were  obtained by coercion. *See Memo, p. 16.*  However, the facts of that case from the Northern District of California are easily distinguishable from the facts in the present matter.  In *Guifu Li,* there were approximately 40 currently-employed plaintiffs, and defendants obtained 38 opt-out forms from them.  The parties agreed that the defendants held multiple, mandatory group meetings as well as mandatory one-on-one meetings during the workday.  The plaintiffs were native Chinese speakers, with limited English proficiency and little or no formal education.  The defendants admitted that they presented opt-out forms to workers during required one-on-one meetings with managers during

work hours and at the work place.  Defendants further admitted that they failed to provide a written translation of the opt-out form in the workers' primary language.  Based on these circumstances, the court concluded that these meetings were inherently coercive, relying on *Wang v. Chinese Daily News, Inc.,* 236 F.R.D. 485, 490 (C.D. Cal. 2006).  *See Guifu Li,* 270 F.R.D. at 518.  However, as has been shown, the *Wang* judgment was vacated by the United States Supreme Court.  *See Wang, supra,* 623 F.3d 743 (9th Cir. 2010), *cert. granted, judgment vacated,* 132 S. Ct. 74, 181 L.Ed.2d 1 (U.S. 2011).

Even were the analysis as to opt-out forms to survive, the present facts are still easily distinguishable.  Here, there were no mandatory group meetings or mandatory one-on-one meetings of any kind.  *See Exhibit J, ¶ 15.*  Here, the opt-out plaintiffs (and all the plaintiffs) speak English as their primary language.  Here, only 24 of the 64 plaintiffs opted out, and the majority of those did not work for PowerComm.  *See id., ¶ 10.*  Thus, the majority of the opt-outs could not be coerced.  Further, the majority of those who were employed by PowerComm and opted out have expressly stated they were not coerced.  *See Exhibits B-E, and G.*  Moreover, *none* of the plaintiffs who did not opt out and who are still employed by PowerComm have asserted they were threatened or coerced, or felt threatened or coerced, to opt out.  Therefore, the Court should not invalidate the opt-out forms, because the present situation is nothing like the facts in *Guifu Li.*

Finally, as to PowerComm, plaintiffs request it should be subject to a "finding of full liquidated damages."  *See Memo, p. 17.*  This request is beyond the pale.  On July 28, 2014, in Plaintiffs' Amended Rule 26(a)(1) Disclosure, plaintiffs presented a liquidated damages claim for $1,163,917.10.  *See ECF No. 86, p. 2.*  Yet in *none* of the authority plaintiffs have provided, were "full liquidated damages" awarded against defendants related to invalidated opt-outs.

Equally telling, plaintiffs provide not a scintilla of authority to support the position that a judgment for "full liquidated damages" is to be made when a party acts with misconduct in a FLSA action before the action has been certified as a class action.  Plaintiffs demand that the Court impose a three-year statute of limitations for defendants' "bad faith," citing 29 U.S.C. § 255.  *See Memo, p. 17.*  However, that statute, and the three-year limitations period, specifically relates to whether the defendants (in this case) willfully failed to pay overtime.  It has no relevance to whether a party in an FLSA action directly negotiated a settlement with another party before the class was certified.  Again, plaintiffs cite *no* case authority to support this request, and it should be treated with the scorn it deserves.

As to defense counsel, defendants argue that the advice of defense counsel should be sufficient to compel defense counsel to serve as a fact witness.  *See Memo, p. 17.*  This red-herring issue has already been fully briefed.  *See ECF Nos. 82, 83, 84 and 85.*  It also ignores controlling law that in a FLSA action a defendant may provide sufficient evidence as to the advice of counsel defense without the attorney's testimony.  *See, Van Dyke v. Bluefield Gas Co.,* 210 F.2d 620, 621 (4th Cir.), *cert. denied,* 347 U.S. 1014, 74 S.Ct. 870, 98 L.Ed. 1137 (1954).  Thus, if this case went to trial, defense counsel would not be a witness for plaintiffs' case-in-chief.  And, in their defense, defendants would only call Mr. Kwansik to testify as to advice of counsel PowerComm received in classifying the plaintiffs as independent contractors.

Plaintiffs argue that it was improper to "deal with" the opt-in plaintiffs to the exclusion of their counsel.  *See Memo, p. 18.*  But their own cited authority destroys their argument.  "Before a class is certified in a class action, counsel for both plaintiffs and defendants may communicate with the putative class, *ex parte,* about the lawsuit."  *Guifu Li, supra,* 270 F.R.D. at 517, citing *Gulf Oil Co., supra,* 452 U.S. at 99-100.  Moreover, the evidence submitted shows that defense

17

counsel did not "deal with" the opt-in plaintiffs.  None of the plaintiffs' declarations assert that they had to "deal with" PowerComm's counsel.  Equally significant, plaintiffs concede that no Maryland case supports their argument.  *See Memo, p. 18.*  Therefore, plaintiffs' argument as to alleged improper conduct of PowerComm's counsel should be rejected.

Given this rich tapestry of incorrect law, fraudulent evidence, and unsupported accusations which the Court must wade through, the Court should consider Rule 11 remedies to prevent further abuses by plaintiffs.  When signing their Motion, plaintiffs' counsel certified that:

(1) it [was] not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims . . . and other legal contentions are warranted by existing law;

(3) the factual contentions have evidentiary support

*Fed. R. Civ. P. Rule 11(b).*

As shown herein, the Motion conforms to none of these requirements.

## CONCLUSION

For all of the foregoing reasons, PowerComm respectfully requests that plaintiffs' Motion be denied, and that the Court consider crafting appropriate sanctions against plaintiffs under FRCP Rule 11(c)(3) and L.R. 105(a).

POWERCOMM CONSTRUCTION, INC.
DAVID KWASNIK SR.


_/S/ Geoffrey M. Bohn_____
Geoffrey M. Bohn, Bar #14872
Robert A. Battey, Bar #13210
BOHN & KOURETAS, PLC
P.O. Box 101685
Arlington, VA 22210
Tel:    (703) 599-7076
Fax:    (703) 842-8089
bohn_kouretas_plc@yahoo.com

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 11th day of August, 2014, a copy of the foregoing was served via electronic mail on the following:

R. Scott Oswald, Esq.
Nicholas Woodfield, Esq.
THE EMPLOYMENT LAW GROUP, P.C.
888 17th Street, NW, Ninth Floor
Washington, D.C. 20006
sowald@employmentlawgroup.com
nwoodfield@employmentlawgroup.com

_/S/ Geoffrey M. Bohn_____
Geoffrey M. Bohn