IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

RANDOLPH, *et al.*                          *

    Plaintiffs,                              *

v.                                          *    Case No.: GJH-13-CV-1696

POWERCOMM CONSTRUCTION,                     *
INC., *et al.*
                                            *
    Defendants.                              *

*   *   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Plaintiffs' Motion for Preliminary Injunction, Invalidation of "Opt-Out" Forms, and Request for Sanctions (ECF No. 89). An evidentiary hearing was held on August 12, 2014. *See* Loc. R. 105.6.  During the hearing, Plaintiff also requested a protective order. For the reasons stated on the record, the Motion for Preliminary Injunction is DENIED; the Request for Sanctions is DENIED, and the Motion for Protective Order is GRANTED. This memorandum further explains and supplements the Court's grant of the protective order. The Court also finds that the Motion to Invalidate Opt-Out Forms is GRANTED for the reasons stated below.

### I.    BACKGROUND

Defendant PowerComm is an electrical utility construction company. (ECF No. 21, Ex. 1). Defendant David Kwasnik, Sr. is the President and CEO of PowerComm. *Id.* Opt-in Plaintiffs

are individuals who work or have worked for PowerComm as "flaggers" or traffic controllers. (ECF No. 50 at 22).

Plaintiffs filed their Complaint on June 12, 2013, alleging violations of the Fair Labor Standards Act ("FLSA") and the Maryland Wage and Hour Law ("MWHL") for failure to pay proper overtime wages. (ECF No. 1). On March 26, 2014, the Court conditionally certified a FLSA collective action. (ECF No. 50). Plaintiffs were then permitted to send notice to potential plaintiffs and Defendants were required to post the notice at the PowerComm facility. (ECF No. 51). Between March and July 2014, over sixty employees or former employees opted-in to the action. (*See* ECF No. 81).

On August 1, 2014, Defendants filed twenty-three opt-out notices with the Court and filed an additional notice on August 4th. (ECF Nos. 87 & 88). In Response, on August 5, 2014, Plaintiff filed a "Motion for Preliminary Injunction, Invalidation of "Opt-Out" Forms, and Request for Sanctions." (ECF No. 89). Per Court Order, Defendant responded to this motion on August 11th. (ECF No. 97). Plaintiffs replied the same day (ECF No. 98), and an evidentiary hearing was held on August 12th.

The parties disagree sharply on the facts prompting the opt-out notices. Plaintiffs describe a coercive scheme to eliminate the opt-in plaintiffs one by one. In support, Plaintiffs attached declarations from at least ten opt-in plaintiffs who signed opt-out forms. In summary, the declarants state, respectively, that they were approached with settlement offers while in the hospital on intravenous painkillers (*see* declaration of George Miles at ECF No. 89, Ex. 1); signed opt-out forms only upon learning that PowerComm intended to terminate employees who did not opt-out (*see* declaration of Lamar Young at ECF No. 89, Ex. 2; declaration of Rodney Brooks at ECF No. 89, Ex. 3; declaration of Shanina Washington at ECF No. 89, Ex. 4); were

2

tricked into signing forms when they did not understand their significance (*see* declaration of Samuel Hegwood at ECF No. 89, Ex.5; declaration of Robin Melton at ECF No. 89, Ex. 6; declaration of Antonio Wall at ECF No. 96, Ex. 2); were told that the company was seeking to have Plaintiffs' counsel disbarred (*see* declaration of Lamar Young at ECF No. 89, Ex. 2; declaration of Shanina Washington at ECF No. 94, Ex. 2); or were promised payments or jobs for opting-out that were never received (*see* declaration of Ezra Calloway at ECF No. 94, Ex. 1).

Defendants paint quite a different picture. Defendants describe a series of settlement negotiations initiated by the individual opt-in plaintiffs. In addition to submitting competing declarations, defendants called four live witnesses at the evidentiary hearing: Arsim Salihi, who was the supervisor of some of the opt-in plaintiffs; Rodney Brooks, one of the employees who opted-out; Laura Kwasnik, vice president of PowerComm; and Defendant David Kwasnik. With the exception of Mr. Brooks, each generally testified consistently with their declarations. Ms. Kwasnik testified that after reading the Court filings related to plaintiff Shanina Washington, she asked Ms. Washington about the factual allegations contained in the documents. Ms. Washington stated that the facts as contained in the court filings were not accurate and, ultimately, Ms. Washington agreed to sign an opt-out letter and settlement agreement. Ms. Kwasnik similarly attested to negotiations with Plaintiffs Lamarr Young and Rodney Brooks. Consistent with Ms. Kwasnik's testimony, Mr. Salihi testified that at Ms. Kwasnik's direction, he provided the checks to certain opt-out plaintiffs and had them execute the settlement agreements and opt-out forms.

David Kwasnik stated that his son contacted him in April 2014 after opt-in plaintiff Eunise Roosevelt Melton asked if he could speak with Mr. Kwasnik about the lawsuit. (ECF No. 97, Ex. J). Mr. Melton discussed settlement with Mr. Kwasnik. Mr. Kwasnik then called his

3

counsel and asked that he draft a settlement agreement and opt-out notice for Mr. Melton. After Mr. Melton signed the papers, according to Mr. Kwasnik, Mr. Melton said "[t]his lawsuit is wrong . . . everyone knew that they were subcontractors, and . . . they also knew that OT [overtime] was not permitted as a subcontractor." *Id.* Mr. Kwasnik stated that Mr. Melton asked him if he could have "a bunch of the opt out notices and settlement agreements" to take to the other plaintiffs. According to Mr. Kwasnik, Mr. Melton's only request was that Mr. Kwasnik pay for his expenses and Mr. Kwansnik agreed. Mr. Kwasnik also stated that all of the individuals who signed opt-out notices and settled their cases did so by initiating discussions and providing him with an offer. He contended that PowerComm did not have any meetings regarding opting-out and did not make any threats or coerce plaintiffs to opt-out. He also noted that seventeen of the opt-out plaintiffs were not employed by PowerComm at the time they opted-out. *Id.*

Defendants also submitted the declarations of Anthony Wills, Justin Foster, Leslie Gross, and Lavelle Gant (all individuals who opted-out and still work for the company), who all stated that they were not coerced into settling their claims and signing the opt-out notice. (ECF No. 97, Exs. B-E). Defendants also provided the Court with several copies of checks from PowerComm to the opt-out plaintiffs with "settlement pay" written in the memo section of the check. (ECF No. 97, Ex. K). Further, Defendants submitted a blank settlement agreement. (ECF No. 97, Ex. M). At the August 12th hearing, Mr. Kwasnik explained that all opt-out plaintiffs had executed a similar settlement agreement.

4

## II.     DISCUSSION

### a.  Protective Order Limiting Communication

Plaintiffs contend that Defendants obtained the opt-out notices by engaging in coercive and misrepresentative contact with individual opt-in plaintiffs. (ECF No. 89 at 1.) Thus, Plaintiffs request that the Court limit Defendants' future communication with opt-in plaintiffs to prevent any further coercion.[1] A district court has "the duty and broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). The same is true for a FLSA collective action. *Hoffmann-Law Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989). To fulfill this duty, courts may enter an order limiting communication if it furthers the general principles of class or collective actions. *Gulf Oil Co.*, 452 U.S. at 99. "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101. Further, the order should be carefully drawn in a way that limits speech as little as possible while also protecting the rights of the parties. *Id.* Before entering an order, the court should be satisfied (1) that "a particular form of communication has occurred or is threatened to occur" and (2) that the communication is "abusive in that threatens the proper functioning of the litigation." *Ross v. Wolf Fire Protection, Inc.*, 799 F.Supp. 2d 518, 526 (D. Md. 2011) (*citing, Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 697–98 (S.D. Ala. 2003)). "Abusive practices that have been considered sufficient to warrant a protective

---

[1] Plaintiffs originally styled their motion to limit party communications based on coercive conduct as a motion for a preliminary injunction. (ECF No. 89). At the August 12, 2014 hearing, the Court opined that an injunction was not the appropriate relief to address Plaintiffs' concerns. During the hearing and at the suggestion of the Court, Plaintiffs recast their motion as a motion for a protective order.

order include communications that coerce prospective class members into excluding themselves from the litigation; communications that contain false, misleading or confusing statements; and communications that undermine cooperation with or confidence in class counsel." *Cox Nuclear Med.*, 214 F.R.D. at 698.

Here, it is undisputed that Defendants communicated with opt-in plaintiffs and that, in twenty-four instances, that communication led to the execution of opt-out forms and settlement agreements; hence, "a particular form of communication has occurred." *Ross*, 799 F.Supp 2d at 526. The remaining question is whether the communication was abusive in that it threatened the proper functioning of litigation.

A review of the law regarding FLSA settlements serves as a useful backdrop for this question. The FLSA was created in light of the "unequal bargaining power between employer and employee. . . ." *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945). To protect workers, who are more susceptible to coercion and more likely to accept unreasonable settlement offers quickly, the statute's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement. *See id.* Court-approved settlement is an exception to that rule, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

The scrutiny that has been deemed necessary regarding FLSA settlements motivates this Court to engage in a similar level of scrutiny of the communications leading to the agreements and opt-outs in this case. In that context, the allegations made by Plaintiffs and supported by the

declarations are particularly troubling to the Court.  As indicated above, the statements describe deception, fear of termination, and suggestions that plaintiffs' counsel could be disbarred. *Compare Ojeda-Sanchez v. Bland Farms*, 600 F.Supp. 2d 1373, 1375 (S.D. Ga. 2009) (granting protective order after plaintiffs opted-out of the action when defendant's agents visited their homes and obtained opt-out forms through fear); *and Longcrier v. HL-A Co., Inc.*, 595 F.Supp. 2d 1218, 1230–31 (S.D. Ala. 2008) (restricting communication with unrepresented members after defendant was found to have misled employees with regard to the lawsuit); *with The Kay Co., LLC v. Equitable Prod. Co.*, 246 F.R.D. 260, 262 (S.D. W.Va. 2007) (finding no reason to restrict communication where defendant discussed settlement with putative class members prior to class certification, and the plaintiff provided no evidence that the communication presented false information or was coercive). While Mr. and Mrs. Kwasnik each testified that there were no threats or deception and that most of the contacts were initiated by the plaintiffs, even if the Court fully credited their testimony, their ability to contradict the assertions in the declarations from the opt-out plaintiffs is limited by Mr. Kwasnik's acknowledgement that he used another employee as a go-between to see if other plaintiffs would be willing to opt-out.  *See* (ECF No. 97, Ex. J).

The testimony of Rodney Brooks, a current employee of Defendants, further belies Defendants' version of events with regard to alleged settlement negotiations. Mr. Brooks originally opted-in to the collective action. (ECF No. 64). He later signed an opt-out form, (ECF No. 87), and a settlement agreement for approximately $29.50. Subsequently, he signed a declaration explaining that he signed the opt-out and settlement agreement because Defendants threatened his employment. (ECF No. 89, Ex. 3). Later, he signed a second declaration, which contradicted the first declaration, stating that Plaintiffs' counsel coerced him into signing the first

declaration. (ECF No. 97, Ex. I). During his live testimony at the hearing, Mr. Brooks was clearly confused about which documents he had signed and when but did seem reasonably clear that his primary motivation for signing the documents he signed was his concern that he would lose his job.[2] *Cf. Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1197–1203 (11th Cir. 1985) (approving order preemptively banning defendant bank from contacting plaintiff class of borrowers for the purpose of eliciting class exclusions because communication would be inherently coercive given relationship). The Court's observation of Mr. Brooks makes it unlikely in the Court's mind that he would knowingly and voluntarily initiate settlement discussions with his employer and raises the very concerns *Lynn's Food Stores* and similar cases seem designed to prevent. Mr. Brooks' conflicting stories made him appear to the Court to be one who could be easily manipulated and raises serious questions about the nature of his "negotiations" as well as negotiations involving similarly situated employees. *See Lynn's Food Stores,* 679 F.2d at 1354–55 (describing confused and misled employees and finding it ". . . illustrative of the many harms which may occur when employers are allowed to 'bargain' with their employees over minimum wages and overtime compensation . . .").

As the Court found at the August 12th hearing, the communications between Defendant and several of the opt-in plaintiffs were abusive in that they threaten the proper functioning of the litigation. To prevent further abuse, the court has granted a protective order, stating that "Defendants, their employees, and agents are hereby prohibited from further communication by

---

[2] At one point during his testimony, Mr. Brooks seemed to indicate that he signed the declaration submitted by Plaintiffs' counsel based on his fear that he would lose his job if he did not sign. As Plaintiffs' counsel noted during the hearing, this would seem counterintuitive since Plaintiffs' counsel would not be the entity who would have control over his continued employment. Notably, when Plaintiffs' counsel identified one of his colleagues, presumably the individual who assisted counsel in preparing the declarations for the Plaintiffs, Mr. Brooks said that was not the person who had "threatened" him regarding his employment.

telephone, email, in person contact or any other means with opt-in plaintiffs, potential opt-in plaintiffs, and their family members regarding the pending lawsuit, their decision to participate as plaintiffs, or their representation." *See Ojeda-Sanchez v. Bland Farms*, 600 F.Supp. 2d 1373, 1375 (S.D. Ga. 2009).

The Court is concerned about restricting Defendants' speech and therefore notes explicitly that this order permits Defendants to discuss any non-litigation related matters with their employees.  Moreover, to the extent that the Court's order is intended to eliminate speech which has been alleged to be misleading to its recipients, the Court notes that there can be no constitutional objection to "forms of communication more likely to deceive the public than to inform it . . . ." *Cent. Hudson Gas & Elec. Co. v. Public Serv. Comm'n of New York,* 447 U.S. 557, 563 (1980).

### b. Opt-Out Forms

While the Court's protective order prevents abuse in the future, the Court is still left to decide the status of the twenty-four plaintiffs who have already signed opt-out forms and entered into settlement agreements with Defendants. In cases where courts cannot determine if class members decided to withdraw on their own volition or because of the abusive communication, courts have restored those who opted-out as members of the class. *See Guilfu Li v. A Perfect Day Franchise*, 270 F.R.D. 509, 518 (N.D. Cal. 2010) (invalidating all opt-out forms in FLSA action after Defendant provided opt-out forms at meetings and told employees that if they participated in the lawsuit they would not receive any money, would be fired, and would be unable to work anywhere else due to their "permanent record"). *Romano v. SLS Residential, Inc.*, 253 F.R.D. 292, 295-300 (S.D.N.Y. 2008) (finding that voiding opt-outs and having corrective notice sent was only way to correct Defendants actions and give members an opportunity to make an

informed decision after Defendant called several plaintiffs and told them that their mental health records would be made public if they did not opt-out of the action); *Impervious Paint Industries, Inc. v. Ashland Oil*, 508 F. Supp. 720, 723–24 (W.D. Ky. 1981) (finding all opt-out class members who were contacted by the defendant "must be restored to the class and must be sent a special notice setting forth [the court's] finding of impropriety on [the defendant's] part" where court could not determine if the "class members made a free and unfettered decision").

Plaintiffs request that the Court invalidate all of the opt-out forms to remedy the results of Defendants' abusive communications. In urging that the Court should not invalidate the opt-out forms, Defendant filed a supplemental notice citing to FLSA cases where courts enforced private settlements. (ECF No. 101 at 3-5). What is particularly notable about these cases is that the courts, although retroactively, found the settlements to be reasonable and free from apparent coercive or abusive behavior. *See Martin v. Spring Break '83 Prod., LLC*, 688 F.3d 247, 255 (5th Cir. 2012); *Thomas v. State of La.*, 534 F.2d 613, 615 (5th Cir. 1976) ("There is no problem of disproportionate bargaining power when a settlement gives employees everything to which they are entitled under the FLSA at the time the agreement is reached.").

Defendants contend that these cases are similar to the one currently before the Court because all plaintiffs who settled in this case initiated the negotiations and were not called into meetings to be pressured into agreements. (ECF 101 at 2). That assessment is far from undisputed. As an initial matter, the settlement agreements underlying the opt-out notices were not presented, even retroactively, to the Court for approval.  Indeed, it was only at the hearing where the Court learned that the opt-out notices filed with the Court were pursuant to written settlement agreements.  Additionally, the facts of this case prevent a finding of reasonableness. Unlike the cases where all parties were informed and the court found nothing amiss, here,

multiple plaintiffs have reported conduct which the Court finds undermines the validity of the agreements. While some opt-out plaintiffs have not alleged mis-conduct, given what seemed to be a concerted effort to convince plaintiffs to opt-out of the litigation, the Court cannot determine whether the negotiations leading to these agreements were the result of a conscious choice by the plaintiffs or the result of abusive communications. *See, e.g. Romano.*, 253 F.R.D. at 299 ("This Court must take all reasonable efforts to correct any erroneous beliefs putative plaintiffs hold as a result of Defendants' conduct. Those potential plaintiffs who opted out based on inaccurate information they received from the Defendants or as a result of the Defendants' coercion must be given an opportunity to make the decision again.").

For the reasons stated above, the Court has serious concerns regarding whether the opt-out plaintiffs made voluntary decisions to opt-out of the litigation and settle their claims. This Court finds that the appropriate remedy for the abusive communication that led to the settlement agreements and opt-out forms is to invalidate all opt-out forms submitted on August 1 and August 4, 2014 and restore the opt-out plaintiffs to their status as opt-in plaintiffs. Simply permitting plaintiffs who opted-out to opt-in if they wish would not suffice as an adequate remedy. For one, the plaintiffs signed purported settlement agreement of their claims under the FLSA that the Court has not scrutinized for reasonableness. *See Lynn's Food Stores, Inc.*, 679 F.2d 1354. Further, a large number of plaintiffs stated that they were subject to coercion. *See* (ECF No. 89, Exs. 1-6; ECF No. 94, Ex. 1; ECF No. 96, Ex. 2). With this large number, the Court is not satisfied that any of those who signed agreements and opt-out forms were fully

informed of the consequences of those actions. For these reasons, Plaintiffs Motion to Invalidate Opt-Out Forms is granted.[3]

Plaintiffs' counsel shall draft a notice to be sent to the opt-out plaintiffs for the Court's review. The corrective notice is to inform those who signed opt-out forms that they are still a party to the litigation and instruct them to consult with their counsel if they have questions regarding this litigation or if they wish to no longer pursue their claim. After the Court approves the notice, Defendants must send, at their expense, the notice to all those who signed opt-out forms. *Stransky v. HealthONE of Denver, Inc.*, 929 F.Supp. 2d 1100, 1110 (D. Co. 2013) (requiring defendant to compile list of FLSA plaintiffs who were subjected to Defendant's misleading communication so that court-prepared corrective notice could be sent to plaintiffs); *See Guilfu Li*, 270 F.R.D. at 518–19 (requiring corrective notice in FLSA action explaining that opt-out forms were invalidated, that the defendant could not retaliate against employee for participating in the lawsuit, and providing plaintiffs' attorney's contact information); *Romano*, 253 F.R.D. at 299 (requiring corrective notice be sent to opt-out plaintiffs, at defendant's expense, which explained that opt-outs were voided and that defendants misled potential members into believing that confidential records would be revealed if they did not opt-out); *Belt v. Emcare, Inc.*, 299 F.Supp 2d 664, 669–70 (E.D. Tex. 2003) (requiring court-prepared corrective notice be sent on defendant's letterhead that provided information to correct defendant's previous misleading information).

---

[3] At the August 12, 2014 hearing, Plaintiff also asked that the Court invalidate the settlement agreements between the opt-out plaintiffs and Defendants. The Court does not have the settlement agreements before it. Thus, there is nothing for the Court to invalidate. However, invalidating the opt-out agreement has Plaintiffs desired outcome of placing those plaintiffs who previously opted-out back into the conditionally certified collective action.

Plaintiff also asked for a plethora of additional remedies and sanctions at the hearing.[4] Those requests are denied for the reasons stated on the record.

### III.   CONCLUSION

For the reasons explained on the record as well as for the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction is DENIED;

Plaintiffs' Motion for Protective Order is GRANTED;

Defendants, their employees, and agents are hereby prohibited from further communication by telephone, email, in person contact, or any other means with opt-in plaintiffs, potential opt-in plaintiffs, and their family members regarding the pending lawsuit, their decision to participate as plaintiffs, or their representation.

Plaintiffs' Motion to Invalidate Opt-Out Forms is GRANTED;

Plaintiffs' counsel shall draft written notice to be sent to the opt-out plaintiffs for the Court's review. The corrective notice is to inform those who signed opt-out forms that they are still parties to the litigation and instructing them to consult with their counsel if they have questions regarding this litigation. After the Court approves the notice, Defendants must send it at their expense.

Plaintiffs' Motion for Sanctions is DENIED.

So ordered.

August 29, 2014

_____
GEORGE J. HAZEL
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiffs requested that the Court deny Defendants pending motion for summary judgment with regard to liquidated damages, extend the statute of limitations, and grant attorney's fees and costs. (ECF No. 89 at 3-4).