**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **GREGORY RANDOLPH,** *et al.* | * | |
| **Plaintiffs,** | * | |
| v. | * | **Case No.: GJH-13-1696** |
| **POWERCOMM CONSTRUCTION,** | * | |
| **INC.,** *et al.* | | |
| | * | |
| **Defendants.** | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

In this Fair Labor Standards Act ("FLSA") case, Plaintiffs are former traffic controllers
(commonly referred to as "flaggers") who allege that Defendant PowerComm Construction, Inc.
and its owner, Defendant David Kwasnik, Sr. (collectively "PowerComm"), failed to pay them
appropriate overtime wages. The Court conditionally certified this case as a collective action on
March 26, 2014, and the opt-in and discovery periods have now closed. Both parties have filed
motions for summary judgment. *See* ECF Nos. 128 & 130. Additionally, PowerComm has filed a
motion to decertify the collective action and Plaintiffs move to certify the collective action. *See*
ECF Nos. 129 & 131. A hearing on these motions is unnecessary.  *See* Loc. R. 105.6 (Md.).  For
the reasons that follow, both motions for summary judgment are granted, in part, and denied, in
part; PowerComm's motion to decertify the collective action is denied; and Plaintiffs' motion to
certify the collective action is granted.

## I.      BACKGROUND

PowerComm is an electrical utility construction company. *See* ECF No. 21 at 22.[1] David

Kwasnik, Sr. is the President and CEO of PowerComm. *See id.* Plaintiffs are individuals who

work or have worked as "flaggers" for PowerComm. *See* ECF No. 136-1–136-68. A flagger

directs vehicles in traffic to ensure the safety of road workers and traffic while construction is

being performed on the road. *See* ECF No. 130-2 at 2.

PowerComm typically contracts with other companies to provide construction,

upgrading, and maintenance services for overhead and underground distribution centers. *See*

ECF No. 21 at 22. Specifically, PowerComm will erect utility poles and towers; replace poles,

conductors, insulators, and transformers; install fiber-optic and coaxial cable; cast in place

manholes; and remediate and demolish bridges, roads, sidewalks, and buildings. *See id.* During

the relevant time period, PowerComm had one contract to provide flaggers to the Potomac

Electric Power Company ("PEPCO"). *See id.* at 23; *see also* ECF No. 130-3 at 23. The flaggers

typically reported to the PowerComm yard in the morning and remained until PowerComm

instructed them where to go. *See* ECF No. 130-3 at 55–56. PowerComm would then send the

flaggers to the location requested by PEPCO. *See id.* at 24.

Plaintiffs filed their Complaint on June 12, 2013 alleging violations of the FLSA and the

Maryland Wage and Hour Law ("MWHL") for failure to pay overtime. *See* ECF No. 1. On

August 14, 2013 and September 27, 2013, PowerComm filed motions for summary judgment

regarding the individual claims of Plaintiffs Gregory Randolph and Dana Brown respectively,

arguing that Plaintiffs were independent contractors not covered by the FLSA. *See* ECF Nos. 20

& 34. Judge Grimm denied PowerComm's motions for summary judgment and conditionally

---

[1] All pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the
page numbers generated by that system.

certified the case as a collective action under the FLSA. *See* ECF Nos. 50 & 51. Since then, almost sixty Plaintiffs have opted-in to the collective action.

On July 2, 2014, PowerComm filed a third motion for partial summary judgment, arguing that, if PowerComm did violate the FLSA, it had done so in good faith thus making liquidated damages unavailable. *See* ECF Nos. 82 & 83. The Court denied this motion as premature. *See* ECF No. 116. On August 5, 2014, Plaintiffs filed a Motion for Protective Order and for Sanctions, arguing that PowerComm had paid some of the opt-in Plaintiffs to opt-out of the collective action. *See* ECF No. 89. On August 29, 2014, the Court prohibited PowerComm from further contact with Plaintiffs regarding this lawsuit and invalidated all opt-out forms. *See* ECF No. 104.

PowerComm filed the pending fourth Motion for Summary Judgment on January 23, 2015 along with a Motion to Decertify the Conditional Collective Action. *See* ECF Nos. 128 & 129. Plaintiffs filed a Cross-Motion for Partial Summary Judgment and a Motion for Nonconditional Certification on February 6, 2015. *See* ECF Nos. 130 & 131. The parties raise numerous issues within their motions, which the Court will address in this Memorandum Opinion.

Further relevant facts will be discussed below. All facts referred to in this Opinion are undisputed unless stated otherwise.

## II.     STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 806 (4th Cir. 2007) (citations omitted); *see also* Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of demonstrating that no genuine dispute exists with regard to material facts. *See Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). Notably, the moving party can demonstrate that there is no genuine issue of material fact by establishing that "there is an absence of evidence in support of the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the party seeking summary judgment demonstrates that there is no admissible evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 535 (D. Md. 2007). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *See Anderson*, 477 U.S. at 247–48 (emphasis in original). The evidentiary materials presented must show facts from which the fact finder could reasonably find for the party opposing summary judgment. *See id.* at 252.

### III.   MOTIONS FOR SUMMARY JUDGMENT

#### A.  Employment status

Both parties move for summary judgment on the issue of employment status, providing competing theories on whether the flaggers were PowerComm employees, who would be covered under the FLSA, or independent contractors, who would not be covered.[2] *See Schultz v.*

---

[2] As indicated previously, this is PowerComm's second request for summary judgment on this issue. *See* ECF No. 12-1 at 24. PowerComm's prior request was denied by Judge Grimm. *See* ECF No. 50. Thus, this motion is construed as a motion for reconsideration of that decision. Under Loc. R. 105.10, a motion to reconsider shall be filed within fourteen days after entry of the order the party wishes the court to reconsider. *See* Loc. R. 105.10. PowerComm did not ask for reconsideration of the Court's March 26, 2014 Order and it has been over a year since the opinion was issued. Further, it is improper to use a motion to reconsider to "ask the Court to rethink what the Court had already thought through—rightly or wrongly." *Potter v. Potter*, 199 F.R.D. 550, 552 (D. Md. 2001) (citing *Above the Belt, Inc. v. Bohannan Roofing, Inc.*, 99 F.R.D.

*Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006). Under the FLSA, an employee is

defined as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and an "employer"

includes "any person acting directly or indirectly in the interest of an employer in relation to an

employee," *id.* at § 203(d). The FLSA defines "employ" to include "to suffer or permit to work."

*Id.* at § 203(g). Looking at these definitions, "[a] broader or more comprehensive coverage of

employees . . . would be difficult to frame." *United States v. Rosenwasser*, 323 U.S. 360, 362

(1945). Indeed, these definitions broaden "the meaning of 'employee' to cover some [workers]

who might not qualify as such under a strict application of traditional agency [or contract] law

principles." *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992). In contrast to

traditional agency law principles, "[i]n determining whether a worker is an employee covered by

the FLSA, a court considers the 'economic realities' of the relationship between the worker and

the putative employer." *Shultz*, 466 F.3d at 304 (citations omitted). Under the economic realities

test, "[t]he focal point is whether the worker is economically dependent on the business to which

he renders service or is, as a matter of economic reality, in business for himself." *Id.* (citations

and internal quotations marks and brackets omitted). The Supreme Court has developed a multi-

factor test to aid in determining if the worker is an employee or in business for himself as an

independent contractor. *See United States v. Silk*, 331 U.S. 704, 716 (1947). These factors, often

called the "*Silk* factors" after the case from which they derive, are (1) the degree of control that

---

99, 101 (E.D.Va.1983). Typically, reconsideration may be granted when there is an "intervening
change of controlled law," there is new evidence or an expanded fact record, or there is a "need
to correct clear error or prevent manifest injustice." 18B Wright, Miller & Cooper, Fed. Prac. &
Proc. Juris. § 4478 n. 42.5 (2d ed.). Here, PowerComm does not indicate that new evidence was
developed during discovery that should persuade the Court to reconsider Judge Grimm's ruling.
Instead, PowerComm simply disagrees with Judge Grimm's decision. *See* ECF No. 128-1 at 23–
33. PowerComm's motion to reconsider the denial of summary judgment on the independent
contractor issue could be denied on that basis alone. Nonetheless, Plaintiffs have now moved for
summary judgment on this issue, requiring the Court to perform the same analysis at this
juncture.

the putative employer has over the manner in which the work is performed; (2) the worker's

opportunities for profit or loss dependent on his or her managerial skills; (3) the worker's

investment in equipment or material, or his or her employment of other workers; (4) the degree

of skill required for the work; (5) the permanence of the working relationship; and (6) the degree

to which the services rendered are an integral part of the putative employer's business. *See*

*Herman v. Mid–Atlantic Installation Servs., Inc.,* 164 F.Supp. 2d 667, 671 (D. Md. 2000)

(citations omitted). "Rather than looking at one particular factor or applying these factors

'mechanically,' courts look at the totality of the circumstances in applying them." *Id.* (citations

omitted). The ultimate conclusion as to whether a worker is an employee or independent

contractor under the FLSA is a legal issue. *See Icicle Seafoods, Inc. v. Worthington,* 475 U.S.

709, 713–14 (1986); *Walton v. Greenbrier Ford, Inc.,* 370 F.3d 446, 450 (4th Cir. 2004).

Analyzing the *Silk* factors below, the Court finds that the flaggers were PowerComm employees

covered by the FLSA.

### i.    Degree of Control

The first *Silk* factor is the degree of control that the alleged employer has over the manner

in which the work is performed. "Where putative employers provide specific direction for how

workers, particularly low-skilled workers, are to perform their jobs, courts have weighed the

control factor in favor of employee status." *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 589

F.Supp. 2d 569, 579 (D. Md. 2008). "[T]he control element may be satisfied where the putative

employer sets the workers' schedules, directs them to particular work sites, requires them to fill

out time sheets, and can fire them at will." *See id.* (citing *Quinteros v. Sparkle Cleaning, Inc.,*

532 F.Supp. 2d 762, 769 (D. Md. 2008)).

Here, PowerComm hired, fired, and trained the flaggers. *See* ECF No. 130-3 at 33–34 & 92. PowerComm required the flaggers to fill out time sheets, kept records of the flaggers' hours, and paid the flaggers an hourly wage. *See* ECF No. 128-1 at 11–12 & 27. PowerComm directed the flaggers to particular job sites and paired more senior flaggers with less experienced ones. *See* ECF No. 130-3 at 32 & 55–57. Further, PowerComm controlled who worked at the sites. Specifically, Mr. Kwasnik testified that the flaggers were not permitted to hire assistants or bring anyone with them to a site because PowerComm had to vet the flagger before he or she could work on the site. *See id.* at 43–44. In addition, PowerComm demonstrated its responsibility over the flaggers when there were problems at the sites, such as when the flaggers were not receiving breaks, by contacting PEPCO to discuss the problem. *See id.* at 41. In contrast, the flaggers had little control over their work. They typically did not choose with whom they worked, when they worked, or how they performed their job duties. *See e.g.*, ECF No. 136-2. Although PEPCO could request to work with a specific flagger, the flagger still needed to let PowerComm know where he or she was working. *See* ECF No. 130-3 at 55.

PowerComm does not appear to argue that the flaggers controlled their work schedules. Instead, PowerComm points to the fact that it shifts control over the work to the contractor on site. *See id.* at 45. But "the issue is not the degree of control that an alleged employer has over the manner in which the work is performed in comparison to that of *another employer*. Rather, it is the degree of control that the alleged employer has in comparison to the control exerted by the *worker*." *Schultz,* 466 F.3d at 305 (emphasis in original). Even if PEPCO supervised the flaggers on the work site, the flaggers were not in control and certainly had less control over their work than PowerComm. In total, the degree of control exercised by PowerComm over the flaggers leads the Court to weigh this factor in Plaintiffs' favor.

### ii.      Opportunity for profit or loss

The second factor is the worker's opportunities for profit or loss dependent on his or her managerial skills. "Where the putative employee's work is, by its nature, time oriented, not project oriented, courts have weighed the second *Silk* factor in favor of employee status." *Montoya*, 589 F.Supp. 2d at 580. Here, while the flaggers may have been able to work additional hours to increase their wages, they could not make business strategy decisions that would typically be associated with the ability to increase the profits of an independent business such as what amount and type of equipment to use, what types of jobs to take, whether to hire assistants, whether to invest in advertisements, or whether to adjust pricing. *Cf. Dole v. Snell*, 875 F.2d 802, 809–10 (10th Cir. 1989) ("With respect to the things upon which the volume of cakes depended, such as the number of retail outlets, and the quality and attractiveness of their decor, the selection and efficiency of the counter help, advertising for the business, the quality of the ingredients in the cakes, and so forth, the decorators had absolutely no input. . . . Their earnings did not depend upon their judgment or initiative, but on the [] need for their work."); *Solis v. Cascom, Inc.*, 3:09-cv-257, 2011 WL 10501391 at * 6 (S.D. Ohio Sept. 21, 2011) ("While the alleged employees were free to work additional hours to increase their income, they had no decisions to make regarding routes, or acquisition of materials, or any facet normally associated with the operation of an independent business."). As such, the flaggers' work was time oriented without the opportunity to use their managerial skills to increase the profits of their alleged businesses. This factor weighs in favor of finding that the flaggers were employees.

### iii.      Investment in equipment or material

The third factor is the worker's investment in equipment or material, or his or her employment of other workers. As for employing other workers, Mr. Kwasnik testified that the

flaggers could not hire an assistant or bring anyone along with them on a job. *See* ECF No. 130-3 at 43–44. As for investment in equipment or materials, "[i]nvestment in this instance is understood to be large expenditures, such as risk capital, or capital investments, and not negligible items or labor itself." *Donovan v. Gillmor*, 535 F.Supp. 154, 161 (N.D. Ohio 1982) (citations omitted). A flagger's job is to maintain safe conditions on the road while construction is performed. *See* ECF No. 130-2 at 2. Mr. Kwasnik testified that PowerComm supplied the flaggers with the equipment necessary to perform that job: pickup trucks, paddles, cones, and walkie-talkies; and the individual flaggers supplied their own protective gear: hard hats, glasses, ear protection, vests, and steel-toed boots. *See* ECF No. 130-3 at 38–40. The investment in clothing and protective gear is not a significant enough investment to turn the flaggers into independent contractors. Indeed, protective gear is a negligible investment in comparison to PowerComm's investment in the equipment necessary to perform the flagging work. *Cf. Heath v. Perdue Farms, Inc.*, 87 F.Supp. 2d 452, 458 (D. Md. 2000) (finding that crew leaders' investment in computers and personal protective equipment such as gloves and masks indicated that crew leaders were employees when compared to employer's investment in the heavy equipment and machinery required to catch chickens); *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 755 (9th Cir. 1979) ("[T]he appellants' investment in light equipment hoes, shovels and picking carts is minimal in comparison with the total investment in land, heavy machinery and supplies necessary for growing the strawberries."). Thus, it is unlikely that the flaggers were in the traffic control business for themselves when they only invested in protective gear, could not hire any workers of their own, and received all the equipment to do their job from PowerComm. This factor weighs in favor of finding the flaggers were PowerComm employees.

### iv.     Degree of skill

The fourth factor is the degree of skill required for the work. Mr. Kwasnik testified that the flaggers were required to pass a test and attend a two-to-four hour training at PowerComm. *See* ECF No. 130-3 at 92–93. Even if these requirements were considered to be a type of certification, a certification requirement does not necessarily mean a high level of skill is required to perform the job. *See Quinteros*, 532 F.Supp. 2d at 770 (finding janitorial building maintenance is not considered a labor that requires a high degree of skill even though the job requires certification on certain machinery). The training and test for flaggers appear to be required to ensure safety because the job can be dangerous and not because the job requires a high degree of skill. Plaintiff Gregory Randolph stated that the hardest part of the job was "standing in traffic all day without getting hit by a car." *See* ECF No. 130-2 at 2. While not minimizing the safety risk involved, directing traffic through a construction site is not labor that requires a high degree of skill or technical expertise. *Cf. Montoya*, 589 F.Supp. 2d at 581 (finding painting is not a high skilled job as "[e]very task, whether skilled or unskilled, requires some degree of knowledge as to how to perform it and an ability to follow directions"); *Heath*, 87 F.Supp. 2d at 458 (finding that catching chickens was unskilled labor and that the ability to do a job faster with experience is "true of most repetitive tasks, skilled or unskilled"). Indeed, neither party indicated that Plaintiffs had experience in traffic control before working for PowerComm. *See Solis*, 2011 WL 10501391 at *6 (finding no special skills were needed where several workers did not have prior experience and could learn the skill involved after a few weeks on the job). The degree of skill required to work as a flagger does not suggest that Plaintiffs were in business for themselves as independent contractors.

### v.        Permanence of the working relationship

The fifth factor is the permanence of the working relationship. A lack of permanence is indicative of independent contractor status when the lack of permanence is due to the worker's own business initiative. *See Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060–61 (2d Cir. 1988); *see also Reich v. Priba Corp.,* 890 F.Supp. 586, 593–94 (N.D. Tx. 1995) (suggesting that permanence of the relationship must denote independence from the putative employer to favor independent contractor status). Here, PowerComm indicated that while some of the flaggers worked there for many years, many of the flaggers worked there for less than a year. *See* ECF No. 43-2 at 3. However, the flaggers did not have specific end dates, they were not free to find other work, and they could not come and go as they pleased. *See, e.g.*, ECF No. 130-2; *Cf. Quinteros*, 532 F.Supp. 2d at 770–71 (" . . . it seems that from the evidence put forward by Plaintiffs, mainly in the form of their check payment stubs, that Plaintiffs had an exclusive relationship with Sparkle and there was continuity during the period with which they worked."). The evidence in this case demonstrates that the short employment periods were due to a high turnover rate and not due to the flaggers being in business for themselves. *See* ECF No. 130-3 at 32 (Mr. Kwasnik testifying that PowerComm "get[s] a lot of guys that come and go . . . some are lazy . . . when they get out there they just don't know and seem to get it."); *see also Brock*, 840 F.2d at 1060–61 (". . . even where work forces are transient, the workers have been deemed employees where the lack of permanence is due to operational characteristics intrinsic to the industry rather than to the workers' own business initiative . . ."). This factor weighs in favor of employee status.

### vi.      Integral part of the employer's business

The final and sixth factor is the degree to which the services rendered are an integral part of the putative employer's business. PowerComm "provide[s] construction services to utilities and the private industry throughout the Eastern United States." *See* ECF No. 21 at 26. Specifically, PowerComm indicates that it performs utility line construction for other businesses. *See* ECF No. 130-3 at 19. Thus, PowerComm's contract with PEPCO to provide the company with flaggers to direct traffic during roadside utility projects does not appear to be an integral part of its business, *see* ECF No. 21 at 23 & ECF No. 130 at 49–50, and this one factor out of six weighs at least slightly in favor of finding the flaggers were not PowerComm employees. But "one factor standing alone does not tip the balance towards a finding of [independent contractor]." *Herman*, 164 F.Supp. 2d at 677.

After analyzing the above factors, the Court finds that the Plaintiffs were economically dependent on PowerComm and not in business for themselves. Thus, the Court finds that Plaintiffs were employees for FLSA purposes as a matter of law. Plaintiffs' motion for summary judgment on this issue is granted.[3]

### B.  Motions Involving Individual Plaintiffs

PowerComm contends that many of the opt-in Plaintiffs should be dismissed from this case for various individual reasons. The Court will address each of PowerComm's arguments in turn.

---

[3] Whether analyzed as a motion for summary judgment or motion for reconsideration of Judge Grimm's earlier decision, PowerComm's motion on this issue is denied.

###### i.       Statute of limitations

This case was filed on June 12, 2013, and the earliest that Plaintiffs began to opt-in was April 28, 2014.[4] *See* ECF Nos. 1 & 57. PowerComm asserts that seventeen of the opt-in Plaintiffs last worked for PowerComm outside of the three-year statute of limitations. *See* ECF No. 128-1 at 3–4. Specifically, PowerComm alleges that Plaintiff Fasil Alemayehu last worked for PowerComm on February 1, 2011, Plaintiff Michael Allen last worked for PowerComm on March 9, 2011, and Plaintiff Robin Melton last worked for PowerComm on February 22, 2011. *See id.* PowerComm also asserts that Plaintiffs Andre Adams, Dexter Anderson, Johnny Boykin, Ezra Calloway, Van Eubanks, Regina Freeman, Samuel Hedgewood, William Holland, and Jacqueline Ridley last worked for PowerComm in 2010. *See id.* PowerComm contends that Plaintiffs David Peterson, Leonard Pringle, and Raleigh Wall last worked for PowerComm in 2009. *See id.* Finally, PowerComm asserts that Plaintiffs Alonzo Mudd and Robert Wall last worked for PowerComm in 2006. *See id.* To support these assertions, PowerComm produced timesheets and tax forms along with an affidavit indicating that those timesheets and tax forms represent the last records PowerComm has for each respective Plaintiff. *See* ECF Nos. 128-2 & 128-3. To dispute PowerComm's assertions with respect to seven of these Plaintiffs, Plaintiffs have produced interrogatory answers from Plaintiffs Fasil Alemayehu, Dexter Anderson, Johnny Boykin, Ezra Calloway, Samuel Hedgewood, Robin Melton, and Leonard Pringle, each stating that they did work during the relevant time period. *See* ECF Nos. 136-3, 136-6, 136-13, 136-18, 136-30, 136-39 & 136-47. While PowerComm claims its tax documents and time records

---

[4] The statute of limitations for an FLSA violation is generally two years, unless Plaintiffs can show that PowerComm's violation was willful in which case it is extended to three years. *See* 29 U.S.C. § 255(a). The statute of limitations continues to run on unnamed class members' claims until they opt-in to the collective action. *See* 29 U.S.C. § 256(b).

constitute superior evidence, the Court cannot ignore Plaintiffs' interrogatory answers. Moreover, there are reasons in the record to doubt the thoroughness and accuracy of PowerComm's records. At his deposition, Mr. Kwasnik initially indicated that PowerComm was not required to keep records, that it may have purged records, and that they were searching through boxes to see if they had any additional relevant material. *See* ECF No. 130-3 at 138–39. PowerComm ultimately produced thousands of records over the course of discovery, which were found in storage, and Mr. Kwasnik acknowledged in a subsequent deposition that his initial belief that they did not have certain records was incorrect. *See* ECF Nos. 128-1 at 3 & 130-16 at 24–25 & 36. As PowerComm's records were not systematically organized and kept, the records may not be complete. Indeed, PowerComm is continuously finding additional records, which in at least two cases, brought a Plaintiff back into the statute of limitations period. *See* ECF No. 130-19. Further, PowerComm has not produced any termination letters or other internal employment records that would conclusively establish the start and end dates of employment. Instead, PowerComm is simply relying on its failure to uncover any additional records as evidence that the records produced are the final records. In these circumstances, Plaintiffs' verified interrogatory answers create a genuine dispute over whether the statute of limitations has run for these Plaintiffs. Thus, summary judgment is not appropriate for these seven Plaintiffs.

Of the remaining ten Plaintiffs for which PowerComm argues the statute of limitations has run, Plaintiffs Alonzo Mudd, Raleigh Wall, and Jacqueline Ridgley state that they last worked at PowerComm in 2004, 2007, and 2009, respectively.[5] Thus, there is no dispute that their claims are barred by the statute of limitations and they are dismissed from this lawsuit.

---

[5] Alonzo Mudd indicates in his interrogatory answers that he last worked for PowerComm in 2004. *See* ECF No. 130-12 at 6–9. Raleigh Wall indicates in his interrogatory answers that he last worked for PowerComm in 2007. *See* ECF No. 130-15 at 5–7. Jacqueline Ridley indicates in

The remaining seven Plaintiffs have no evidence of when they worked for PowerComm and are unable to refute PowerComm's evidence in any way. Indeed, Plaintiffs Andre Adams, Michael Allen, Van Eubanks, Regina Freeman, William Holland, David Peterson, and Robert Wall do not state when they worked for PowerComm in their answers to interrogatories. *See* ECF Nos. 136-3, 136-5, 136-23, 136-25, 136-32, 136-45, & 136-59. Without any evidence to refute PowerComm's records as to when they worked for PowerComm, no reasonable fact-finder could find in favor of Plaintiffs and PowerComm is entitled to summary judgment with regard to these seven Plaintiffs. *See Anderson*, 477 U.S. at 252 (finding that to defeat summary judgment the evidentiary materials presented must show facts from which the fact finder could reasonably find for the party opposing summary judgment). Plaintiffs Andre Adams, Michael Allen, Van Eubanks, Regina Freeman, William Holland, David Peterson, and Robert Wall are dismissed from this case.

### ii.        Failure to opt-in timely

PowerComm argues that all Plaintiffs who did not opt-in by June 2, 2014 should be barred from this litigation. This would include Cornelius Redfearn (opted-in on June 9, 2014, *see* ECF No. 78), Darnell Maddox (opted-in on June 20, 2014, *see* ECF No. 80), Ronald Young (opted-in on July 1, 2014, *see* ECF No. 81), and Calvin Gorham (opted-in on September 24, 2014, *see* ECF No. 114).

Opt-in deadlines are set by the trial court and not the FLSA. *See Regan v. City of Charleston, S.C.*, 2:13-cv-3046-PMD, 2015 WL 1299967 at * 2 (D.S.C. Mar. 23, 2015) (citing 29 U.S.C. §§ 216(b), 255 & 256) (additional citation omitted). "[T]he FLSA does not set forth or otherwise prescribe the standard under which a trial court should consider whether potential

---

her interrogatory answers that she last worked for PowerComm in 2009. *See* ECF No. 130-14 at 9.

plaintiffs may join a collective action by filing the requisite opt-in consent forms after the stated

deadline." *Id.* (citing *Ruggles v. Wellpoint, Inc.,* 687 F.Supp. 2d 30, 37 (N.D.N.Y. 2009)).

Instead, "courts have generally decided the question by balancing various combinations of the

following factors: (1) whether 'good cause' exists for the late submissions; (2) prejudice to the

defendant; (3) how long after the deadline passed the consent forms were filed; (4) judicial

economy; and (5) the remedial purposes of the FLSA." *Id.* (citing *Ruggles*, 687 F.Supp. 2d at 37)

(collecting cases)) (internal quotation marks omitted).

In this case, Plaintiffs sent PowerComm the interrogatory answers for all opt-in Plaintiffs

at the same time.[6] *See* ECF No. 136 at 7. Thus, PowerComm received the interrogatory answers

for the late opt-ins at the same time they received answers from Plaintiffs who opted-in before

the deadline. Further, PowerComm had the information on these four Plaintiffs for several

months before the end of discovery. *See* ECF No. 124. Thus, the late opt-in notices did not

unduly prejudice PowerComm. "[The opt-in deadline was] chosen by the Court in its discretion

and w[as] not constrained by any considerations other than the practicalities of the case and

setting an appropriate deadline so that discovery could proceed." *Robinson-Smith v. Gov't Emps.*

*Ins. Co.*, 424 F.Supp. 2d 117, 123 (D.D.C. 2006). Further, "there is little economy in spawning

identical FLSA lawsuits that themselves might be properly joined with this lawsuit in the future."

*Ruggles,* 687 F.Supp. 2d at 38. Thus, the interests of judicial economy are best served by

accepting the late opt-in notices. This approach is also consistent with the FLSA's remedial

statutory scheme. *See Kelley v. Alamo,* 964 F.2d 747, 749–50 (8th Cir. 1992) ("The FLSA should

be given a broad reading, in favor of coverage. It is a remedial statute that 'has been construed

liberally to apply to the furthest reaches consistent with congressional direction.' A generous

---

[6] The answers were provided on September 29, 2014. *See* ECF No. 136 at 7. The named
Plaintiffs' interrogatory answers were provided in 2013. *See id.*

reading, in favor of those whom [C]ongress intended to benefit from the law, is also appropriate

when considering issues of time limits and deadlines.") (quoting *Mitchell v. Lublin, McGaughy*

*& Assocs.,* 358 U.S. 207, 211 (1959)). For these reasons, Plaintiffs late opt-in notices are

accepted and PowerComm's request to dismiss the late opt-in Plaintiffs from the action is

denied.

### iii.   Failure to indicate compensable claim

PowerComm contends that Plaintiffs Cornelius Redfearn and Ronald Wall claim no

damages in their damage computation disclosures and should therefore be dismissed from the

litigation.[7] *See* ECF No. 128-1 at 5 & 18. Additionally, PowerComm complains that Plaintiffs

Jeff Jordan and Calvin Gorham failed to file damage computation disclosures and should also be

dismissed. *See id.* at 5–6 & 18–19. Fed. R. Civ. P. 26(a)(1)(A)(iii) requires each party to

disclose, as part of its initial disclosures during discovery, a "computation of each category of

damages" claimed. It also requires each party to update its initial disclosures "in a timely manner

if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and

if the additional or corrective information has not otherwise been made known to the other

parties." Fed.R.Civ.P. 26(e)(1)(A).

In Plaintiffs' second amended damages computation disclosures, filed on September 5,

2014, the damages for Plaintiffs Cornelius Redfearn and Ronald Wall are $0.00. *See* ECF No.

107. Plaintiffs Jeff Jordan and Calvin Gorham are not included in the disclosures. *See id.*

However, Redfearn and Wall provided PowerComm with interrogatory answers indicating that

they worked overtime and were not paid. *See* ECF Nos. 136-49 & 136-60. Jordan and Gorham

also provided PowerComm with their interrogatory answers during discovery, which provided

---

[7] PowerComm also includes Jacqueline Ridley and Raleigh Wall but they have already been
dismissed from this case because their claims are time-barred.

damages estimates. *See* ECF No. 136-28 & 136-36. Thus, PowerComm received information on damages for these Plaintiffs through their interrogatory answers and summary judgment in their favor is not the appropriate remedy for failure to provide a damages figure in the disclosures.[8] *See Malik v. Falcon Holdings, LLC*, 675 F.3d 646, 649–50 (7th Cir. 2012) (denying defendants' motion for summary judgment based on failure to provide calculation of damages disclosures because "if defendants thought that plaintiffs had failed to perform their obligations under the rules, they should have asked the district judge for a sanction before discovery closed rather tha[n] waiting (as they did) until their motion for summary judgment . . . Defendants have not explained how the plaintiffs' delay injured them, so a remedy would have been mild."). Thus, while the four Plaintiffs mentioned above should have updated their initial disclosures, they will not be dismissed from this case for failure to do so.

### iv.     Failure to answer interrogatories

PowerComm states that Plaintiffs Rodney Brooks, Terrence Dove, Jeff Jordan, Edward Robinson, Anthony Wills, Ronald Young, and Terence Brown [9] have failed to provide signed or verified interrogatory answers[10] and urges the Court to order these Plaintiffs to show cause why they should not be dismissed from this lawsuit for their failure to do so. *See* ECF No. 128-1 at 19–20.

---

[8] Fed. R. Civ. P. 37(a)(3)(A) authorizes a motion to compel disclosure of matters required under Rule 26(a). Here, PowerComm never filed a motion to compel.

[9] PowerComm originally included Leslie Gross but that signature page was provided. *See* ECF No. 132 at 9.

[10] Ronald Young's interrogatory answers are signed by Kalyn Young and Terence Brown's interrogatory answers are signed by his mother.

Under Fed. R. Civ. P. 33(b)(5), interrogatory answers must be signed, under oath, by the person making them. Thus, the Court agrees that a show cause order of some form is appropriate. As Plaintiffs admit that some signatures have not been provided, the Court orders that Plaintiffs provide those signatures within 14 days of this Memorandum Opinion and accompanying Order. If the signatures verifying the interrogatory answers are not provided, Plaintiffs Rodney Brooks, Terrence Dove, Jeff Jordan, Edward Robinson, Anthony Wills, Ronald Young, and Terence Brown will not be able to use those answers to support their claims. This will be an appropriate sanction given that PowerComm has had these Plaintiffs' interrogatory answers, albeit without signatures, since September 2014.

### C.  Amount of Overtime

PowerComm contends that they have produced the full and complete time records for Plaintiffs and therefore should be granted summary judgment as to the amount of overtime hours Plaintiffs worked. *See* ECF No. 128-1 at 10. Plaintiff carries the burden of proof in an FLSA claim for overtime wages. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-87 (1946); *Anderson*, 477 U.S. at 256–57. This burden is light, especially when the employer's records are inaccurate or inadequate. *See Mt. Clemens Pottery Co.*, 328 U.S. at 686–87. The employee must produce "sufficient evidence to show the amount and extent of [] work as a matter of just and reasonable inference." *See id.* at 687. If the employee does so, the employer has the burden to "come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *See id.* at 687–88.

Here, PowerComm asserts that it has produced Plaintiffs' signed timesheets that were contemporaneously recorded and has therefore negated Plaintiffs' evidence.[11] *See* ECF No. 128-1 at 10–13. Thus, PowerComm argues that the Court should find that Plaintiffs' estimates of overtime worked included in their affidavits and answers to interrogatories represent only a "scintilla of evidence" that should be disregarded.[12] *See id.* at 14. For support of its contention that the produced timesheets should control, PowerComm cites *White v. Washington Gas*, DKC-2003-3816, 2005 WL 544733 (D. Md. Mar. 4, 2005). There, the plaintiff contended that he was owed for breaks and lunch periods when he worked but was not compensated. *See id.* at * 5. He admitted that he did not report the hours. *See id.* The Court found that his signed timesheets also did not include those hours and, as such, his affidavit stating that he worked the hours amounted to only a scintilla of evidence and could not defeat summary judgment. *See id.*

This case is readily distinguishable from *White*. Here, Plaintiffs question the authenticity and thoroughness of PowerComm's timesheets and have an arguable basis to do so. *See* ECF No. 135 at 1–2. Specifically, Plaintiffs asserts that PowerComm originally claimed that it may have discarded the timesheets and only later found the alleged timesheets in storage. *Id.* Thus, the

---

[11] PowerComm has also calculated the wages PowerComm owes based on its timesheets and records of overtime paid. Included in its calculations are payments PowerComm made to Plaintiffs while this lawsuit was pending for the overtime hours worked and not previously paid. *See id.* at 11. These attempted settlements would unlikely be counted as overtime paid when calculating damages.

[12] Plaintiffs did not include their interrogatory answers in their opposition to PowerComm's motion for summary judgment. However, they filed a "Motion for Leave to Supplement Pursuant to Fed. R. Civ. P. 56(3)(1)," which provided the Court with their evidence as to Plaintiffs' hours. *See* ECF No. 136. Although PowerComm opposes this motion, the Court finds the motion helpful and PowerComm was able to fully respond to the motion. It is well settled that courts prefer to decide cases on their merits. *See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.,* 616 F.3d 413, 417 & n. 3 (4th Cir.2010). Plaintiffs' motion to supplement and PowerComm's motion to file a surreply to Plaintiffs' motion are granted and the Court will consider those filings. *See* ECF No. 136 & 139.

timesheets do not appear to have been consistently and methodically kept, raising the possibility

that they may be incomplete or inaccurate. Plaintiffs' argument has support in the record. Indeed,

PowerComm continuously supplemented its discovery with newly found documents. *See* ECF

No. 130-19. Thus, PowerComm is not in a position to establish that the records produced are

unequivocally the full and complete time records and should be relied on by the Court as a

matter of law. Against PowerComm's timesheets, Plaintiffs provide interrogatory answers with

overtime estimates. *See* ECF Nos. 136-1–136-68. The discrepancies between PowerComm's

summary of its timesheet records and Plaintiffs' estimates are significant. Plaintiffs maintain that

they regularly worked overtime and no Plaintiff has been confronted with the timesheets to

verify their signature or indicate whether they agree with PowerComm's time calculations.[13]

Given the genuine factual disputes over the hours worked, PowerComm's motion for summary

judgment on this issue must be denied.

### D.  Willful Violation

PowerComm has also moved for summary judgment on the issue of willfulness, arguing

that Plaintiffs have failed to put forth evidence that PowerComm willfully violated the FLSA and

that PowerComm has affirmatively refuted any such allegation through its reliance on the advice

of counsel. ECF No. 128-1 at 20–23. Plaintiffs have filed a cross-motion for summary judgment

on this issue, contending that their evidence undisputedly proves that PowerComm's actions

were willful. *See* ECF No. 130 at 36–37. When cross-motions for summary judgment are filed,

the same standards of review apply. *Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923

---

[13] According to PowerComm's timesheets summary, Plaintiffs typically did not work over forty hours a week, typically only worked two or three days a week, and sometimes did not work at all for several weeks in a row or worked one day a week. *See* ECF No. 128-5.

F.Supp. 720, 729 (D. Md. 1996). The Court must deny both motions if questions of material fact

exist. *Id.*

The FLSA statute of limitations is two years, but it is extended to three years if the

violation of the Act was willful. *See* 29 U.S.C. § 255(a). An employer is willful in its violation of

the FLSA if the employer knows, or shows reckless disregard as to whether, its conduct is

prohibited by the FLSA. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1998).

Negligent conduct is not enough to constitute "willful" conduct. *See id.* "Although this is

ultimately a question of fact, a plaintiff must present sufficient evidence of willfulness to survive

summary judgment." *Hantz v. Prospect Mortg., LLC*, 11 F.Supp. 3d 612, 617 (E.D. Va. 2014)

(citing *Pignataro v. Port Authority of New York and New Jersey,* 593 F.3d 265, 273 (3d Cir.

2010)). Typically, willfulness is found when the defendant was already investigated for an FLSA

violation or when there is evidence that the defendant tried to cover-up an FLSA violation.

*Williams v. Maryland Office Relocators*, 485 F.Supp. 2d 616, 621 (D. Md. 2007) (citing *Chao v.

Self Pride, Inc.,* RDB-03-3409, 2005 WL 1400740 at *10–11 (D. Md. 2005) (finding genuine

dispute of material fact as to whether defendants were given specific warnings regarding FLSA

violations that they did not heed), *Martin v. Deiriggi,* 985 F.2d 129, 136 (4th Cir. 1992) (finding

evidence that the employer destroyed and withheld records in order to block the Department of

Labor's investigation of FLSA violations supported finding of willfulness), and *Cubias v. Casa

Furniture and Bedding, LLC,* 1:06cv286 (JCC), 2007 WL 150973 (E.D. Va. 2007) (granting

plaintiff's summary judgment motion as to the issue of willfulness when defendant had split

employees' hours between its two companies so that it appeared on each individual company's

books that the employees were working less than 40 hours a week, and defendant had also signed

an employment verification form stating that employees were being paid overtime when they were not).

Here, the evidence on the issue of willfulness is conflicting. On the one hand, Plaintiffs have produced evidence that suggests PowerComm knew the flaggers were employees and not independent contractors and nonetheless categorized them as independent contractors. For example, PowerComm had the flaggers sign an application for employment. *See* ECF No. 130-3 at 126–27. Additionally, at least one plaintiff produced evidence that PowerComm at times provided him with a W2 form, typically used for employees, and at other times with a 1099 form, typically used for independent contractors. *See* ECF No. 130-2. Notably, some of the flaggers assert that they requested overtime pay and some, at times, received overtime pay. *See id.* Finally, Plaintiffs assert that PowerComm did not consult an attorney until after classifying flaggers as independent contractors. *See* ECF No. 130 at 36.

On the other hand, Mr. Kwasnik testified that PowerComm believed the flaggers were independent contractors because the company did not control the flaggers' day-to-day work and did not pay for the flaggers' personal protective gear. ECF 130-3 at 48–52. Specifically, Mr. Kwasnik noted that another contractor had control over the flaggers. *See id*. Further, there is no indication that PowerComm had on prior occasions been cited for related violations of the FLSA or otherwise had notice that it was not in compliance.

The Court finds there is enough conflicting evidence to create a genuine dispute of fact over the issue of PowerComm's alleged willfulness. Both Plaintiffs' and PowerComm's motions for summary judgment on this issue are denied.

### E.  Good Faith

Plaintiffs request summary judgment on the issue of whether PowerComm acted in good faith when classifying the flaggers as independent contractors. *See* ECF No. 130 at 29–36. Whereas a willful violation increases the amount of damages by lengthening the statute of limitations, a violation that was done in good faith may eliminate liquidated damages. *See* 29 U.S.C. § 260.

The FLSA provides that an employer who violates the Act shall be liable to the affected employee in the amount of their unpaid wages and "in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "Under the FLSA, there is a presumption in favor of liquidated damages against employers who violate the statute." *Rogers v. Savings First Mortgage, LLC*, 362 F.Supp. 2d 624, 637 (D. Md. 2005). However, under 29 U.S.C. § 260 of the Portal-to-Portal Pay Act, a court may, in its discretion, reduce or eliminate an award of liquidated damages if the employer shows that the "act or omission giving rise to [the FLSA] action was in good faith and that [the employer] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]." The employer has the "plain and substantial burden" of persuading the court that the "failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997) (citations and internal quotation marks omitted); *see also* 29 C.F.R. § 790.22(a)–(b). "This burden is a difficult one to meet . . . and [d]ouble damages are the norm, single damages the exception." *Rogers*, 362 F.Supp. 2d at 638 (citation and internal quotation marks omitted). Further, deciding to preclude liquidated damages is within the court's complete discretion; the decision to reduce or eliminate an award of liquidated damages is a judge, not a jury, determination. *See* 29 U.S.C. § 260(c).

Here, PowerComm argues good faith based on its reliance on the advice of counsel.[14] Some courts have found reliance on the advice of counsel sufficient to show good faith and reasonable grounds. For example, in *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375–76 (4th Cir. 2011), the Fourth Circuit found that the district court did not abuse its discretion in denying liquidated damages where the employer produced evidence of reliance on the advice of counsel—namely, fourteen letters from an attorney advising how the company could alter or maintain its practices to remain compliant with the FLSA. *See also VanDyke v. Bluefield Gas Co.*, 210 F.2d 620, 622 (4th Cir. 1954) (finding that trial judge exercised sound discretion in awarding no liquidated damages upon determining that employer's failure to comply with the FLSA was in good faith and based upon reasonable grounds where the employer was advised by an attorney, an officer, and stockholder in the employer company that the employee was not covered by the FLSA). However, in *Rogers*, 362 F.Supp. 2d at 638–39, the district court rejected the employer's advice-of-counsel defense with regard to FLSA liquidated damages because, although the employer spoke with counsel, the employer did not have any specific conversations related to wage and hour matters with counsel and could not remember with whom he spoke.

Under the evidence PowerComm has produced in this case, the Court is not convinced that PowerComm has met its "plain and substantial burden" that its "failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose . . . more than a compensatory verdict." *Mayhew*, 125 F.3d at 220 (citation and internal quotation marks omitted). Mr. Kwasnik testified that he classified the flaggers as independent

---

[14] The Court previously declined to address this issue when raised in PowerComm's earlier motion for summary judgment as, at that time, liability had not been determined and the motion was premature. *See* ECF No. 116. Now, PowerComm has provided its own timesheets and essentially conceded that, if the flaggers were employees, it did not pay them proper overtime. Given the current status of the case, Plaintiffs' motion for summary judgment on the issue of good faith is properly before the Court.

contractors both before and after receiving advice from counsel and he could not remember when he received the advice. *See* ECF No. 130-3 at 48–49. His counsel, Mr. Bohn, testified that PowerComm discussed the flaggers' classification as independent contractors with its accountant in April 2013 in the context of the preparation of tax returns. *See* ECF No. 130-5 at 14. Mr. Bohn also testified that he did not believe he ever spoke about the flaggers' classification to anyone at PowerComm prior to 2013, and he did not believe PowerComm received any legal advice regarding the classification of the flaggers before 2013. *See id.* at 16–17. He further indicated that he never performed a written analysis on the classification for PowerComm before doing so for the purpose of litigation in this case. *See id.* at 20. Both Mr. Kwasnik's and Mr. Bohn's recollections of when and what was discussed are vague and general. The possible discussions occurred years after PowerComm classified the flaggers as independent contractors, years after most of the claims in this case ripened, and only a few months before this case was filed. The discussions presented are simply insufficient to persuade the Court to exercise its discretion to eliminate liquidated damages. Thus, Plaintiffs' motion for summary judgment on this issue is granted, and liquidated damages will not be reduced or eliminated in this case based on PowerComm's good faith.

### F.  Motion to Disqualify Defense Counsel

Plaintiffs have moved to disqualify Geoffrey Bohn, Esq. and Robert Battey, Esq. as counsel because Plaintiffs wish to call Mr. Bohn and Mr. Battey as witnesses to refute PowerComm's advice of counsel defense. *See* ECF No. 130 at 46. As the Court has already found that good faith is not applicable in this case, the only remaining issue to which this testimony may be relevant is the issue of willfulness wherein PowerComm maintains that it did not willfully violate the FLSA because it consulted an attorney about classifying the flaggers as

independent contractors. Thus, it is possible that PowerComm's attorneys, Mr. Bohn and Mr. Battey, will be called to testify about advice they provided regarding FLSA compliance.

It has been recognized that "[d]isqualification is a drastic remedy since it deprives litigants of their right to freely choose their own counsel." *Gross v. SES Americom, Inc.,* 307 F.Supp. 2d 719, 722 (D. Md. 2004) (citations omitted). Thus, "disqualification at the urging of opposing counsel is permitted only 'where the conflict is such as clearly to call in question the fair and efficient administration of justice.'" *Id.* at 723 (citations omitted). The Court must also be mindful of the possibility that a disqualification motion may be abused for tactical purposes. *See Shaffer v. Farm Fresh, Inc.,* 966 F.2d 142, 146 (4th Cir.1992) (citation omitted). Accordingly, it is typically the movant who must satisfy a high standard of proof that disqualification is warranted. *See Buckley v. Airshield Corp.,* 908 F.Supp. 299, 304 (D. Md. 1995). But "[w]hen the attorney in question is so clearly aware before the fact of the potential conflict between his roles as advocate and witness, then the scrutiny usually applied to an opposing party's motion for disqualification is unnecessary, and the burden shifts to the attorney in question." *Klupt v. Krongard,* 728 A.2d 727, 741 (Md. Ct. Spec. App. 1999).

The Maryland Rules of Professional Conduct address the issue of serving as both an advocate and a witness. "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client." Md. Rule 16–812, Rules of Prof. Conduct, Rule 3.7(a). "Combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client." *Id.* cmt. 1.

In determining whether the potential for dual roles should be permitted based on substantial hardship to the client under Rule 3.7(a)(3), the court balances the interests of the client against the interests of the opposing side and the trier of fact. *See EEOC v. Bardon, Inc.*, RTW-09-cv-1883, 2010 WL 323067 at *2 (D. Md. Jan. 19, 2010). In determining the interests of the opposing side and the trier of fact, the court considers whether the lack of the attorney's testimony may mislead the trier of fact, whether the lack of the attorney's testimony would hurt the opposing party's case, and whether the attorney's testimony would conflict with other witnesses' testimonies. *See id.* As discussed above, Mr. Kwasnik could not recall when he talked with counsel while Mr. Bohn clarified that the conversations took place in 2013. Thus, if Mr. Bohn does not testify, the trier of fact may be misled into believing that the advice occurred before the relevant time period and was extensive. As such, Plaintiffs would suffer prejudice by the lack of Mr. Bohn's testimony. Given the need for his testimony, the Court then considers the potential confusion to the jury of seeing Mr. Bohn act as both advocate and witness during trial. However, PowerComm would suffer a significant hardship if the testimony of Mr. Bohn led to his disqualification as an attorney in this case after two years of litigation. Yet the Court is also mindful that Mr. Bohn's testimony is only relevant because PowerComm raised the advice of counsel as a defense against Plaintiffs' allegations of willfulness.

The most, and perhaps only, relevant potential testimony from Mr. Bohn is that any consultation regarding classification did not take place until 2013. Mr. Bohn has been questioned by Plaintiffs on this issue at his deposition. Thus, a stipulation as to what Mr. Bohn would testify to if called sufficiently balances the competing interests presented by this issue. If the parties agreed to such a stipulation, there would be no need to disqualify PowerComm's counsel and the relevant evidence would be placed before the jury. The Court will give the parties fourteen days

from the date of this Memorandum Opinion and accompanying Order to determine their course

of action before ruling on Plaintiffs' motion to disqualify.[15] In this regard, the Court notes that if

Mr. Bohn were disqualified, the Court would be inclined to provide PowerComm's new counsel

with ample time to get sufficiently up-to-speed with this case. As this would delay resolution of

Plaintiffs' claims, both sides should make equal efforts to resolve this issue by way of stipulation

if possible.

## IV.     CROSS-MOTIONS TO DECERTIFY AND CERTIFY COLLECTIVE ACTION

The FLSA permits a plaintiff to bring an action on behalf of himself and other employees

that are "similarly situated" to the plaintiff. *See* 29 U.S.C. § 216(b). When the plaintiff brings the

action on behalf of other employees, who opt-in to the action, the action is known as a

"collective action." A collective action under the FLSA differs from a class action under Fed. R.

Civ. P. 23. *Gionfriddo v. Jason Zink, LLC*, 769 F.Supp. 2d 880, 886 (D. Md. 2011) (citing 7B

Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1807

(3d ed. 2005)). Unlike in class actions under Fed. R. Civ. P. 23, in FLSA collective actions,

"plaintiffs must affirmatively 'opt in' to the suit in order to be considered a member of the

class"; Rule 23's requirements of numerosity, typicality, commonality, and adequacy do not

apply; and plaintiffs need only show that they and potential class members are "similarly

situated" for the Court to certify the collective action. *Mancia v. Mayflower Textile Servs. Co.*,

No. CCB-08-273, 2008 WL 4735344 at *2 (D. Md. Oct. 14, 2008).

---

[15] The Court will not disqualify Mr. Battey. *See* Rule 3.7(b) of the Maryland Rules of
Professional Conduct ("A lawyer may act as advocate in a trial in which another lawyer in the
lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or
Rule 1.9."). While Plaintiffs contend Mr. Battey may have also discussed the issue with
PowerComm, based on the standards outlined above, this is not sufficient to disqualify him as
counsel at this time.

When deciding whether to certify a collective action pursuant to the FLSA, courts generally follow a two-stage process. *See Syrja v. Westat, Inc.*, 756 F.Supp. 2d 682, 686 (D. Md. 2010). In the first stage, commonly referred to as the notice stage, the court makes a "threshold determination of 'whether the plaintiffs have demonstrated that potential class members are 'similarly situated,' such that court-facilitated notice to the putative class members would be appropriate.'" *Id.* (quoting *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000)). In the second stage, following the close of discovery, the court conducts a "more stringent inquiry" to determine whether the plaintiffs are in fact "similarly situated," as required by Section 216(b). *See Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007). At this later stage, referred to as the decertification stage, the court makes a final decision about the propriety of proceeding as a collective action. *See Syrja*, 756 F.Supp.2d at 686. This case was conditionally certified on March 26, 2014. *See* ECF No. 51. Since then, almost sixty Plaintiffs have opted-in to this action. Now, PowerComm has prompted the Court to engage in the more stringent inquiry by filing a motion to decertify the collective action after discovery. *See* ECF No. 129.

The Court has broad discretion in determining whether the case should continue as a collective action after discovery. *See Gionfriddo*, 769 F.Supp. 2d at 886 (citations omitted). The FLSA does not define similarly situated, but "[i]n making this determination, courts have considered three factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *See id.* (quoting *Rawls,* 244 F.R.D. at 300 (quoting *Thiessen v. Gen. Elec. Capital Corp.,* 996 F.Supp. 1071, 1081 (D. Kan. 1998))). Essentially, collective action members are similarly situated when there are "issues common to

the proposed class that are central to the disposition of the FLSA claims and that such common issues can be substantially adjudicated without consideration of facts unique or particularized as to each class member." *See LeFleur v. Dollar Tree Stores, Inc.*, 30 F.Supp. 3d 463, 468 (E.D. Va. 2014) (citation and internal quotation marks omitted).

The Court first looks at the employment settings. PowerComm asserts that Plaintiffs had different employment settings because they worked under different contractors for different hours at different locations. *See* ECF No. 129-1. Plaintiffs allege that they all worked for PowerComm as flaggers, performing the same job functions, and PowerComm failed to pay them overtime. *See* ECF Nos. 136-1–136-68. In line with Plaintiffs' argument, Mr. Kwasnik has acknowledged that all flaggers essentially have the same job. *See* ECF No. 130-3 at 37. Indeed, Mr. Kwasnik testified that the flaggers all worked with PEPCO. He has also indicated that flaggers are subject to a single set of standards, and has repeatedly discussed the policies and standards for flaggers in general terms, *see, e.g.*, ECF No. 43-2 at ¶¶ 5–23, without any indication that the nature of a flagger's work or payment conditions differed among work sites. Specifically, Mr. Kwasnik testified that the job of a "flagger" or "traffic controller" is regulated and that PowerComm follows those state and federal regulations. *See* ECF No. 130-3 at 28–29. Additionally, Plaintiffs all challenge PowerComm's practice of failing to pay overtime. To that end, Plaintiffs have provided evidence to show that Mr. Kwasnik's son, speaking on behalf of PowerComm, stated that "PowerComm doesn't pay overtime" as a matter of policy. *See* ECF No. 42-3 at 2. Thus, Plaintiffs have provided sufficient evidence of a "company-wide policy which may violate the FLSA[.]" *See Rawls*, 244 F.R.D. at 300. Even if Plaintiffs worked different hours at different work sites, Plaintiffs performed the same job duties, were all classified as independent contractors by PowerComm, and were all paid hourly. *See* ECF No.

136-1–136-68. Thus, the assessment of "Plaintiffs' job duties, geographic location, supervision, and salary" leads to a finding that there was little factual difference between the individual Plaintiffs and their employment settings. *See Rawls,* 244 F.R.D. at 300. While there may be differences in hours worked, those differences are inevitable and do not preclude a finding of a similarly situated collective action. *See, e.g., LeFleur,* 30 F.Supp. 3d at 468; *Romero v. Mountaire Farms, Inc.,* 796 F.Supp.2d 700, 705 (E.D.N.C. 2011) (citation omitted).

The Court next looks at PowerComm's defenses. "The individualized defenses factor assesses whether potential defenses pertain to the plaintiff class or whether the potential defenses require proof of individualized facts at trial." *Rawls*, 244 F.R.D. at 300 (citing *Thiessen,* 996 F.Supp. at 1085). PowerComm contends that its defenses are individual to each Plaintiff. *See* ECF No. 129-1 at 8. It asserts that some Plaintiffs are time-barred, some did not opt-in during the deadline, some did not provide verified interrogatories, and some did not provide damages calculations. *See* ECF No. 129-1 at 8. These procedural defenses have largely been resolved by this Memorandum Opinion. PowerComm has not shown that any factual defenses would require "substantial individualized determinations" such that a collective action would not lead to efficient adjudication. *See Gionfriddo*, 769 F.Supp.2d at 887–88 (citation and internal quotation marks omitted). Indeed, for the most part, the only remaining factual issues are Plaintiffs' hours and whether PowerComm acted willfully in violation of the FLSA. As to willfulness, the defenses to PowerComm's failure to pay overtime will span across all Plaintiffs. As for Plaintiffs' hours, a collective action does not "prohibit individualized inquiry 'in connection with fashioning the specific relief or damages to be awarded to each class member.'" *LaFleur*, 30 F.Supp. 3d at 474 (citing *Houston et al. v. URS Corp. et al.,* 591 F.Supp.2d 827, 832 (E.D. Va. 2008)). "Testimony regarding dates, hours and pay rate does not affect certification of the

collective action or impact the determination of whether [PowerComm's] practices violate the FLSA and were imposed upon opt-in plaintiffs similarly." *See LaFleur*, 30 F.Supp. 3d at 475.

As to the fairness and procedural considerations, the Court considers the primary objectives of a collective action under § 216(b), namely "(1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000). The Court must also "determine whether it can coherently manage the class in a manner that will not prejudice any party." *Id.* (citing *Thiessen*, 996 F.Supp. at 1084). Here, PowerComm contends that if this action is not decertified, it will need to prepare mini-trials for each Plaintiff. As explained above, this is not the case. The members of the collective action share the common issue of whether PowerComm typically did not pay them overtime wages.

Given that some Plaintiffs did not work a significant amount of overtime, "[e]ach individual plaintiff would be unlikely to pursue his or her claim alone due to the costs involved relative to the damages sought." *See LaFleur*, 30 F.Supp. 2d at 475 (citing *Russell v. Illinois Bell Tel. Co., Inc.*, 721 F.Supp.2d 804, 823 (N.D. Ill. 2010) ("Because of the modest amounts likely involved, many of the plaintiffs would be unable to afford the costs of pursuing their claims individually.")). Thus, "[c]ertification would significantly reduce the costs of litigation to members of the class." *See id.* As such, these considerations weigh in favor of certification, especially because "it is an extreme step to dismiss a suit simply by decertifying a class, where a 'potentially proper class' exists and can be easily created." *Id.* (citing *Woe v. Cuomo,* 729 F.2d 96, 107 (2d Cir. 1984)). For all the reasons discussed, this case is certified and will continue as a collective action.

### V.      CONCLUSION

For the reasons explained above, both parties' motions for summary judgment are granted, in part, and denied, in part. The Court grants Plaintiffs' motion for summary judgment on the issue of employment status and finds that Plaintiffs are PowerComm employees covered by the FLSA. The Court also grants Plaintiffs' motion for summary judgment on the issue of good faith and finds that liquidated damages will be applied if judgment for the Plaintiffs is rendered. The Court denies PowerComm's motion for summary judgment on the issue of failure to timely opt-in and failure to indicate a compensable claim. PowerComm's motion for summary judgment on the issue of statute of limitations is granted with respect to Plaintiffs Alonzo Mudd, Raleigh Wall, Jacqueline Ridgley, Andre Adams, Michael Allen, Van Eubanks, Regina Freeman, William Holland, David Peterson, and Robert Wall and those Plaintiffs are dismissed. PowerComm's motion for summary judgment on the issue of statute of limitations is denied with respect to Plaintiffs Fasil Alemayehu, Dexter Anderson, Johnny Boykin, Ezra Calloway, Samuel Hedgewood, Robin Melton, and Leonard Pringle. PowerComm's motion for summary judgment with regard to the amount of overtime is denied. The parties' cross-motions for summary judgment on the issue of willful violation are both denied. Plaintiffs' motion to disqualify counsel will be held in abeyance and, within fourteen days of the date of this Opinion, the parties will provide the Court with a status update on whether a stipulation is agreed to with regard to Mr. Bohn's testimony. Further, Plaintiffs shall provide PowerComm with verified interrogatory answers for Plaintiffs Rodney Brooks, Terrence Dove, Jeff Jordan, Edward Robinson, Anthony Wills, Ronald Young, and Terence Brown within fourteen days of this Opinion or those Plaintiffs will be unable to use those interrogatory answers as evidence. Finally, PowerComm's

motion to decertify the collective action is denied and Plaintiffs' motion to certify the collective

action is granted.

A separate Order shall issue.


Dated: <u>August 21, 2015</u>                              _____/S/_____

GEORGE J. HAZEL
United States District Judge