IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **GREGORY RANDOLPH, et al.,** | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: GJH-13-1696 |
| **POWERCOMM CONSTRUCTION, INC., et al.,** | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In this Fair Labor Standards Act ("FLSA") case, Plaintiffs are former traffic controllers (commonly referred to as "flaggers") who allege that Defendant PowerComm Construction, Inc. and its owner, Defendant David Kwasnik, Sr. (collectively, "PowerComm"), failed to pay them appropriate overtime wages. The parties have now entered a settlement agreement and jointly request that the Court approve the settlement over the objection of named Plaintiffs Gregory Randolph and Dana Brown, as well as opt-in Plaintiffs Lenard Pringle, Leslie Gross, and Eunise Melton (collectively, the "Objectors"). A Fairness Hearing was conducted on February 18, 2016, during which parties presented oral arguments and the Objectors each testified. For the reasons explained below, the Court will approve the proposed settlement agreement.

I. **BACKGROUND**

PowerComm is an electrical utility construction company. *See* ECF No. 21 at 22.[1] David Kwasnik, Sr. is the President and CEO of PowerComm. *See id.* Plaintiffs are individuals who work or have worked as flaggers for PowerComm. *See* ECF No. 136-1–136-68. A flagger directs vehicles in traffic to ensure the safety of road workers and traffic while construction is being performed on the road. *See* ECF No. 130-2 at 2.

PowerComm typically contracts with other companies to provide construction, upgrading, and maintenance services for overhead and underground distribution centers. *See* ECF No. 21 at 22. Specifically, PowerComm is hired to: erect utility poles and towers; replace poles, conductors, insulators, and transformers; install fiber-optic and coaxial cable; cast in place manholes; and, remediate and demolish bridges, roads, sidewalks, and buildings. *See id.* During the relevant time period, PowerComm had one contract to provide flaggers to the Potomac Electric Power Company ("PEPCO"). *See id.* at 23; *see also* ECF No. 130-3 at 23. The flaggers typically reported to the PowerComm yard in the morning and remained until PowerComm instructed them where to go. *See* ECF No. 130-3 at 55–56. PowerComm would then send the flaggers to the location requested by PEPCO. *See id.* at 24.

Plaintiffs filed their Complaint on June 12, 2013, alleging violations of the FLSA and the Maryland Wage and Hour Law ("MWHL") for failure to pay overtime. *See* ECF No. 1. On August 14, 2013 and September 27, 2013, PowerComm filed motions for summary judgment regarding the individual claims of Plaintiffs Gregory Randolph and Dana Brown, respectively, arguing that Plaintiffs were independent contractors not covered by the FLSA. *See* ECF Nos. 20 & 34. Judge Paul Grimm denied PowerComm's motions for summary judgment and

---

[1] All pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

conditionally certified the case as a collective action under the FLSA. *See* ECF Nos. 50 & 51. Since then, more than fifty Plaintiffs have opted-in to the collective action.

On July 2, 2014, PowerComm filed a third motion for partial summary judgment, arguing that if PowerComm did violate the FLSA, it had done so in good faith thus making liquidated damages unavailable. *See* ECF Nos. 82 & 83. The Court denied this motion as premature. *See* ECF No. 116. On August 5, 2014, Plaintiffs filed a Motion for Protective Order and for Sanctions, arguing that PowerComm had improperly paid some of the opt-in Plaintiffs to opt-out of the collective action. *See* ECF No. 89. On August 29, 2014, the Court prohibited PowerComm from further contact with Plaintiffs regarding this lawsuit and invalidated all opt-out forms. *See* ECF No. 104.

PowerComm filed a fourth Motion for Summary Judgment on January 23, 2015, along with a Motion to Decertify the Conditional Collective Action. *See* ECF Nos. 128 & 129. Plaintiffs filed a Cross-Motion for Partial Summary Judgment and a Motion for Nonconditional Certification on February 6, 2015. *See* ECF Nos. 130 & 131.

Both parties' motions for summary judgment were granted, in part, and denied, in part. ECF No. 142. In its August 21, 2015 Memorandum Opinion, the Court found that Plaintiffs are PowerComm employees covered by the FLSA and that liquidated damages would be applied if judgment for the Plaintiffs is rendered. *Id.* The Court denied PowerComm's motion for summary judgment based on their contention that Plaintiffs failed to timely opt-in and failed to allege a compensable claim. *Id.* PowerComm's motion for summary judgment on the issue of the statute of limitations was granted with respect to certain Plaintiffs whose claims were therefore dismissed but denied with regard to certain other Plaintiffs whose claims therefore remained. *Id.* Finally, the Court certified Plaintiffs' collective FLSA action. *Id.*

After the resolution of dispositive motions, a Scheduling Order was issued setting a trial date of February 18, 2016. ECF No. 148. On December 29, 2015, the parties filed a Motion to Schedule Fairness Hearing to determine the fairness of and approve a settlement agreement reached by the parties. ECF No. 156. An Order granting the Motion for Fairness Hearing was entered and, after appropriate notice was approved and issued, a Fairness Hearing was held on February 18, 2016, the date previously set for trial. At the hearing, named Plaintiffs Gregory Randolph and Dana Brown, as well as opt-in Plaintiffs Lenard Pringle, Leslie Gross, and Eunise Melton, testified regarding their objections to the settlement agreement. The general concern of Pringle, Gross, and Melton was with their specific proposed settlement payments, with some challenging the amounts being received by other opt-in Plaintiffs. Counsel for the Plaintiffs contended that the settlement amount reflected his concerns with the case, including difficulties maintaining contact with certain Plaintiffs and concerns about the Defendants' ability to pay if a judgment for a more significant amount was reached at trial.

## II. ANALYSIS

### A. FLSA Settlements

The FLSA does not permit settlement or compromise over alleged FLSA violations except with: (1) supervision by the Secretary of Labor; or, (2) a judicial finding that the settlement reflects "a reasonable compromise of disputed issues" rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores, Inc.*, 679 F.2d 1350, 1354 (11th Cir. 1982); *see also Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010) (explaining that courts assess FLSA settlements for reasonableness). These restrictions help carry out the purpose of the FLSA, which was enacted "to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between

employers and employees." *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404 (D. Md. 2014). Before approving a FLSA settlement, courts must evaluate whether the "settlement proposed by an employer and employees . . . is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food Stores, Inc.*, 679 F.2d at 1355 (italics not in original). To do so, courts examine "(1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement." *Duprey*, 30 F. Supp. 3d at 408. "These factors are most likely to be satisfied where there is an 'assurance of an adversarial context' and the employee is 'represented by an attorney who can protect [his] rights under the statute.'" *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1354).

"Although 'the Fourth Circuit has not directly addressed the factors to consider in determining whether an [FLSA class settlement] . . . is fair and reasonable, various federal courts have analogized to the fairness factors generally considered for court approval of class action settlements under Rule 23(e).'" *Hoffman v. First Student*, No. WDQ-06-1882, 2010 WL 1176641 (D. Md. Mar. 23, 2010) (alteration in original) (citing *Lomascolo v. Parsons Brinkernoff, Inc.*, No. 1:08cv1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009). Rule 23(e) requires the Court to evaluate the settlement's procedural and substantive fairness. Fed. R. Civ. P. 23(e).

### B. Procedural Fairness

As required by Rule 23(e), Counsel sent court-approved Notice of Fairness Hearing to Opt-in Plaintiffs. ECF No. 160. Three opt-in Plaintiffs objected and were permitted to testify at the Fairness Hearing. Thus, the Court finds that the parties have complied with Rule 23(e) and the proposed settlement meets the procedural requirement for fairness.

### C. Substantive Fairness

In determining the Substantive Fairness of this FLSA collective action, the Court will analyze the factors typically addressed in Court approval of FLSA settlements in cases such as *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404 (D. Md. 2014).

#### 1. Bona Fide Dispute

In determining whether a bona fide dispute over FLSA liability exists, the Court reviews the pleadings, any subsequent court filings, and the parties' recitals in the proposed settlement. *Fonseka v. Alfredhouse Eldercare Inc.*, No. GJH-14-3498, 2015 U.S. Dist. LEXIS 80709, at *4–5 (D. Md. June 19, 2015) (citing *Duprey*, 30 F. Supp. 3d at 408). Here, as summarized above, the parties have engaged in lengthy and, at times, contentious litigation for more than two years. In that time, the Court has resolved four motions for summary judgment but issues still remain regarding the Plaintiffs' ability to prove the specific number of hours they worked. Under these circumstances, the parties have sufficiently demonstrated that bona fide disputes exist regarding the extent of liability under the FLSA in this case.

#### 2. Fairness & Reasonableness

In determining whether a settlement of FLSA claims is fair and reasonable, the Court may consider the following:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Lomascolo*, 2009 WL 3094955, at *10. Here, discovery has been completed and multiple summary judgment motions have been decided. At the time of settlement, a trial date had been

scheduled. There has been no evidence to suggest any fraud or collusion in the settlement; to the contrary, the litigation has been so fiercely contested that the Court observed at the Fairness Hearing how unusual it was to see counsel on the same page for the purposes of settlement. Both lead counsel in this case are experienced attorneys in this area of law.

The total proposed settlement is $100,000.02. ECF No. 161. For all but the named Plaintiffs, this represents thirty-eight percent of their claimed damages that fall within the statute of limitations. The named Plaintiffs, Dana Brown and Gregory Randolph, will each receive the full amount of their claimed damages. In total, five of the fifty-five Plaintiffs have objected. As for the Objectors, the concerns, not surprisingly, are related to the amount they would each receive. Each raised concerns of fairness regarding the fact that other Plaintiffs were receiving amounts that they could not establish. A number of Objectors complained that the amounts being received were below the amounts they expected. Ms. Brown and Mr. Randolph had more specific objections based on the fact that, as named Plaintiffs, they were required to show documentation while other Plaintiffs were able to establish damage amounts by "word of mouth."

In response to the testimony of the Objectors, Plaintiff counsel noted a variety of reasons for entering the Settlement Agreement. First, counsel pointed to his concerns about the participation levels of his clients at the then-upcoming jury trial. As an example, counsel noted that he had difficulty getting signed interrogatory answers from many of his clients during discovery. The Court was aware of this issue as it was raised during one of the summary judgment motions. ECF No. 142 at 18. Further, the Court notes that there had been preliminary discussions between counsel and the Court regarding whether "representative testimony" would be permitted at trial and the Court invited briefing on the issue, which had not been decided at

the time of the settlement. Plaintiffs' counsel also noted that this was an "off-the-clock" case where little, if any, documentation existed to establish the hours worked by the Plaintiffs. Notably, the concerns of the Objectors are a result of just this concern. Plaintiffs were unable to definitely establish the hours each of them worked. The difficulty encountered by counsel in making determinations for settlement purposes would have been left to a jury at trial. Counsel was understandably concerned about how the jury would resolve these issues.

Plaintiffs' counsel additionally noted that the amount of the final agreement was twice the initial offer of judgment extended by the Defendants. Indeed, the offer of judgment filed with the court was for $49,408.50. ECF No. 153-1 at 3. Finally, Plaintiffs' counsel noted that he had thoroughly researched the Defendant and was concerned that a judgment at trial could be for a higher amount than Defendant would be able to afford.

"A claim that individual dissenters are entitled to more money is not, by itself, sufficient to reject the overall fairness of the settlement." *Thomas v. Albright*, 139 F.3d 227, 232 (D.C. Cir. 1998). "A settlement can be fair even though a significant portion of the class and some of the named plaintiffs object to it." *Id.* (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). It is not for a court reviewing a settlement agreement to have a mini-trial and reach its own determination regarding the amounts each plaintiff should receive. Rather, "there is a strong presumption in favor of finding a settlement fair." *Hoffman*, 2010 WL 1176641, at *2.

While the Court is not unsympathetic to the concerns of the Objectors, in many ways their concerns actually demonstrate why the settlement agreement is fair and reasonable. The Plaintiffs in this case would have had great difficulty establishing the amount of hours they worked for Defendants. Relying on their oral testimony alone, a jury may have rejected some or all of their claims. Conversely, had the jury accepted all of their claims, both counsel expressed

concern regarding Defendants' ability to pay the judgment. Finally, to the extent the named Plaintiffs, Mr. Randolph and Mr. Brown, complain that they are not being treated fairly as compared to the opt-in Plaintiffs, the settlement provides them with a significant benefit as named Plaintiffs. Specifically, while the opt-in Plaintiffs only receive thirty-eight percent of the claimed damages, they are receiving one-hundred percent of their claimed damages. Accordingly, the proposed settlement terms appear to be reasonable, adequate, and fair.

### III.    CONCLUSION

The parties have indicated to the Court that they are unable to reach agreement as to Attorney Fees. Thus, the Court will at this time APPROVE the settlement agreement and ENTER judgment in the amount of $100,000.02 with Plaintiff to file a Motion for Attorney Fees within fourteen days of this judgment. A separate Order follows.

Date: April 28, 2016

_____
GEORGE J. HAZEL
United States District Judge