FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2018 JUN -1 P 5: 13

CLERK'S OFFICE
AT GREENBELT

DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

GREGORY RANDOLPH, *et al.*,

    Plaintiffs,

v.                                       Case No.: GJH-13-1696

POWERCOMM CONSTRUCTION,
INC., *et al.*,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This case is before the Court on remand from the Fourth Circuit, which vacated the Court's prior award of attorney's fees, ECF No. 173. *See Randolph v. Powercomm Construction, Inc.*, 715 Fed. App'x 227 (4th Cir. 2017). The parties have filed additional written submissions on the issues presented by the Fourth Circuit, ECF Nos. 185, 186, 189, 190, and the Court heard arguments from the parties during an on-the-record telephone conference held on May 9, 2018. ECF No. 187. For the following reasons, the Court awards attorney's fees to Plaintiffs in the amount of $177,756.50.

### I. BACKGROUND

This case arose from a dispute over whether Defendants PowerComm Construction, Inc. and PowerComm's owner, David Kwasnik, Sr., paid Plaintiffs, who worked for Defendants as traffic controllers, the appropriate overtime wages. ECF No. 166 at 1.[1] The parties entered a settlement agreement on December 22, 2015, requiring payment to Plaintiffs of $100,000.02. *Id.* at 7; ECF No. 156 at 9. Upon the parties' motion, this Court held a Fairness Hearing on February

---

[1] Page cites to documents filed on the Court's electronic filing system (CM/ECF) refer to page numbers generated by that system.

18, 2016, to determine the fairness of the agreement. *See* ECF No. 166 at 1. The Court approved the settlement agreement in a Memorandum Opinion dated April 28, 2016. *Id.* However, the parties were unable to reach an agreement regarding the attorney's fees, and the Court directed Plaintiffs to file a motion for attorney's fees, which they did. ECF Nos. 167 and 168. After considering the written submissions of the parties, on October 31, 2016, the Court granted-in-part the Plaintiffs' Motion for Attorney's Fees, but instructed the Plaintiffs to submit a revised request for fees and costs, deducting certain expenses and adjusting some billing rates. ECF No. 173 at 16. On November 21, 2016, the Court granted Plaintiffs' Revised Petition for Award of Attorney's Fees and Costs, ECF No. 175, and awarded Plaintiffs $183,764.00 in fees and $4,852.44 in costs. ECF No. 176.

In awarding attorney's fees to Plaintiffs, the Court declined to subtract fees for work performed regarding 10 plaintiffs, out of the 65 total plaintiffs, who were dismissed on summary judgment as their claims were time-barred. ECF No. 173 at 13. The Court also declined to adjust the amount of attorney's fees on the basis of the success of the litigation, reasoning that "the overall recovery of $100,000.02 represents thirty-eight percent of [the Plaintiffs'] claimed damages that fall within the statute of limitation." *Id.* at 13.

Defendants appealed the Court's decision to the Fourth Circuit. ECF No. 177. The Fourth Circuit vacated the Court's fee award and remanded the case. *Randolph*, 715 Fed. App'x at 232. The Fourth Circuit began by stating that courts should follow "a three-step process for arriving at a reasonable attorney's fee." *Id.* at 230. First, "determine the lodestar figure"; second, "subtract fees for hours spent on unsuccessful claims unrelated to successful ones"; third, "the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* The Fourth Circuit emphasized that "[i]n general, the decision

2

whether and in what amount to award attorney fees is one committed to the award court's discretion, subject only to review for abuse of that discretion." *Id.* (quoting *Brown & Pipkins, LLC v. Serv. Emp. Int'l Union*, 846 F.3d 716, 729 (4th Cir. 2017)). The Fourth Circuit concluded, however, that the Court had abused its discretion in two regards.

First, the Fourth Circuit assessed whether "the district court abused its discretion by failing to reduce the award at step two of the fee analysis." *Id.* at 230–31. The Fourth Circuit noted that in declining to deduct time spent by Plaintiffs' counsel pursuing the claims of the dismissed Plaintiffs, the Court "cited the general principle that an award need not be reduced for unsuccessful claims that share a common core of facts with successful claims." *Id.* at 231. The Fourth Circuit, however, found it "difficult to imagine how the time-barred claims of the dismissed Plaintiffs are intertwined with the successful claims, other than the two categories of claims sharing the same Defendants and both relating to unpaid wages." *Id.* The Fourth Circuit concluded that "[b]ecause the district court failed to adequately consider time spent pursuing claims on behalf of the dismissed Plaintiffs at step two of the fee analysis, we are constrained to vacate the fee award, and we remand for the district court to conduct a proper analysis at step two." *Id.*

Second, the Fourth Circuit noted that "the district court declined to reduce the fee award based on the results obtained because Plaintiffs purportedly received 38% of their claimed damages that they incurred during the statute of limitations period, and the court did not want to discourage plaintiffs' attorneys from reaching reasonable settlements by reducing the fee award." *Id.* at 231. The Fourth Circuit noted that "the latter justification may be persuasive," but pointed out that "the court clearly erred in its characterization of the percentage of claimed damages received by Plaintiffs." *Id.* Specifically, the Fourth Circuit reasoned that "the district court

3

overlooked the fact that Plaintiffs pursued liquidated damages . . . resulting in a total alleged damages amount of $789,916. When the settlement amount is divided by this figure, one discovers that Plaintiffs received about 13% of the damages that they sought." *Id.* The Fourth Circuit concluded that "the district court was not required to proportionally reduce the award to account for this disparity," but instructed the Court to "reconsider its finding at step three that the relief obtained represents 38% of the relief claimed by Plaintiffs for claims that accrued within the statute of limitations." *Id.* at 232.

Following the Fourth Circuit's remand of the case, the Court received additional written submissions from the parties. On November 22, 2017, the Plaintiffs submitted a Motion to Schedule Hearing, asking to be heard on the issues raised by the Fourth Circuit. ECF No. 185. On December 5, 2017, Defendants opposed Plaintiffs' request, ECF No. 186. The Court scheduled a telephone conference on the issues raised by the Fourth Circuit, and sought the parties' input on a number of issues. ECF No. 188. On May 7, 2018, Plaintiffs submitted an additional "Documentary Submission," ECF No. 189, and on May 16, 2018, Defendants filed an additional written submission, ECF No. 190.

**II.      DISCUSSION**

**A. Step Two Analysis**

As explained above, the Fourth Circuit found that the Court abused its discretion at the second step of the attorney's fee analysis by failing to sufficiently account for—or explain its decision not to account for— the 10 plaintiffs whose claims were dismissed at the summary judgment stage. In their additional written submission, Plaintiffs argue that five of the ten dismissed plaintiffs were identified by Defendants, and that Plaintiffs should not be "punished for representing individual[] [Plaintiffs] mistakenly represented to them as being within the

4

timely class." ECF No. 189 at 2. Plaintiffs argue that they represented the remaining five plaintiffs because "Defendants failed and/or refused to produce any confirming discovery for any of the foregoing plaintiffs." *Id.* at 3. Thus, Plaintiffs argue that the amount of attorney's fees should not be reduced at all. On the other hand, Defendants argue in their written submission that the attorney's fees should be reduced by a flat 15%; the approximate percentage of total Plaintiffs whose claims were found to be time barred (10 out of 65). ECF No. 190 at 3.

As part of their Revised Petition for Award of Attorneys' Fees and Costs, Plaintiffs provided the Court with 44 pages of billing summaries, including detailed descriptions of the work performed. ECF No. 175 at 5–48. The Court carefully reviewed these descriptions, and was able to identify the entries that included the 10 Plaintiffs whose claims were time-barred. *E.g., id.* at 18, line 365 (billing for "Telephone Conference With Alonzo Mudd," one of the 10 dismissed Plaintiffs); *id.* line 379 (billing for "Telephone Conference With Jacqueline Ridley," another one of the 10 dismissed Plaintiffs).[2] Where one of the unsuccessful Plaintiffs was expressly mentioned in the billing description, the Court concludes that this work was not "intertwined with the successful claims" and should be deducted from the final award. *Randolph*, 715 Fed. App'x at 231.[3] Adding up all of the time that was billed on unsuccessful claims, the Court

---

[2] The Court notes that a number of entries referred to multiple Plaintiffs, some of whom were eventually dismissed but some of whose claims were successful. *See, e.g.*, ECF No. 175 at 27, line 641 (billing for "drafting IROG responses for opt ins Mudd, Newton, Perkins, Peterson," where Mudd and Peterson's claims were determined to be time-barred). *See* ECF No. 182-1 at 1. The Court also notes that multiple Plaintiffs have the last name "Wall" and multiple Plaintiffs have the last name "Eubanks." *Id.* In both instances, some of those Plaintiffs with the last name Wall or Eubanks were successful, and some of their claims were determined to be time-barred. The Court identified multiple instances where Plaintiffs billed time to a "Wall" or "Eubanks" but did not specify the first name. *See, e.g.*, ECF No. 175 at 24, line 531 (billing for "Reviewed Wall Declaration edits"). During the telephone conference, the Plaintiffs conceded that if the Court decided to parse out the time that was billed on unsuccessful claims, it should construe any unclear billing entries in Defendants' favor, as it is Plaintiffs' counsel's responsibility to maintain clear records. Thus, where an entry mentioned multiple Plaintiffs, some of whose claims were ultimately unsuccessful, or mentioned a Plaintiff by last name only and a Plaintiff with that last name was dismissed from the case, the Court has reduced those entries from the total award. *See* ECF No. 175 lines 377, 479, 480, 531, 614, 624, 627, 628, 641, 646, 661, 662, 681, 950, 982, 983, 1007, 1114.

[3] Specifically, the Court deducts from its award ECF No. 175 lines 337, 349, 365, 368, 374, 379, 421, 460, 572, 597, 599, 639, 654, 671, 697, 738, 751, 776, 813, 889, 896, 941, 1018, 1044, 1055.

reduces the attorney's fees award by $6,007.50, bringing the total fee award to $177,756.50.
Having reviewed the descriptions, the Court concludes that the remainder of the time billed was either spent working directly on a successful Plaintiff's case, or was spent on work product that applied to the entire class—*e.g.*, drafting the Complaint, drafting responses to dispositive motions, etc.—which constituted the type of "intertwined" work for which the Court need not reduce the amount of fees awarded. For example, the Complaint does not refer to any Plaintiffs specifically other than the class representative, Gregory Randolph. *See* ECF No. 1. Thus, the work done preparing this document was sufficiently intertwined for all Plaintiffs, and would have taken the same amount of time regardless of whether the ten ultimately unsuccessful plaintiffs were part of the class. Similarly, at the Motion for Summary Judgment stage, Defendants argued that the claims of seventeen Plaintiffs were time-barred. ECF No. 128-1 at 13–14. In their opposition filing, Plaintiffs did not address these seventeen plaintiffs individually; rather, Plaintiffs argued broadly that none of the seventeen plaintiffs' claims should be dismissed because "Defendants failed to properly maintain time records." ECF No. 130 at 37. There were no separate arguments that were made solely on behalf of the ten plaintiffs whose claims were found to be time-barred. Thus, the work done on behalf of the ten unsuccessful plaintiffs was intertwined with the work done on behalf of the seven successful plaintiffs. As such, the Court will not reduce the overall award for this type of work.

### B. Step Three Analysis

As discussed above, in vacating the Court's attorney's fee award, the Fourth Circuit also found that the Court abused its discretion in finding that the settlement entered into by the parties amounted to 38% of the liability sought by Plaintiffs, and pointed out that "the district court overlooked the fact that Plaintiffs pursued liquidated damages . . . resulting in a total alleged

damages amount of $789,916. When the settlement amount is divided by this figure, one discovers that Plaintiffs received about 13% of the damages that they sought." *Id.* Thus, the Court reexamines whether to reduce the attorney's fees based on the degree of success.

In reassessing its determination, the Court notes that while "the degree of success obtained by the plaintiff is the most critical factor in determining the reasonableness of a fee award," *Hensley*, 461 U.S. at 436, the Court does "not reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in proportion to the damages' shortfall," *Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 190 (4th Cir. 2007). Furthermore, "[t]here is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436–37.

In awarding attorney's fees, the Court does not wish to disincentivize plaintiffs' counsel from reaching reasonable settlements by reducing their attorney's fees awards in cases of more moderate amounts. "The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134–35 (6th Cir. 1994))). While Plaintiffs here did not ultimately recover the damages sought at the beginning of litigation, their final award was successful. As counsel agreed at the hearing, Plaintiffs faced two significant challenges that very likely would have dramatically reduced their recovery had the case proceeded to trial: (1) a lack of proof regarding willfulness, which would have limited the

statute of limitations to two years and reduced or eliminated a number of claims, and (2) the lack of documentation regarding the number of hours worked. ECF No. 189 at 17–18. In light of those challenges, Plaintiffs' recovery was significant. For example, "Mr. Randolph, the seminal plaintiff in the case, his time sheets reflect he was going to make $984. He's making almost $12,000 out of the settlement." ECF No. 189 at 59. Similarly, for "Eunise Melton, . . . [o]ur records show that he would have been paid $900, and here he's getting more than $6,000 based on the settlement." *Id.* at 58. Counsel for Defendants also explained that "each and every one of these plaintiffs that has testified today, they're receiving a lot more money than had we gone to trial and entered all the time sheets into evidence and the jury would have ruled in our favor." *Id.* Additionally, at the fairness hearing, Plaintiffs' counsel stated that based on his research and testimony from PowerComm's owner at a prior hearing, Defendants would not have been able to pay a larger Plaintiffs' verdict or settlement. ECF No. 189 at 20–21.[4] In sum, Plaintiffs' counsel negotiated a settlement for Plaintiffs in an amount that they would reasonably be able to recover without driving Defendants to bankruptcy, and which assured the class members would recover significantly more than their records showed they were entitled to. This was a sufficiently successful outcome, despite a recovery of only 13% of the initial damages sought, and the Court will not reduce attorney's fees here on the basis of results obtained.

### III. CONCLUSION

Accordingly, for the reasons stated above, the Court awards attorney's fees to Plaintiffs in the amount of $177,756.50.

Date: June 1, 2018

George J. Hazel
United States District Judge

---

[4] In an effort to ensure their clients received payment, the settlement agreement called for Plaintiffs to receive their payments immediately, with attorney's fees to be paid over a course of two years. ECF No. 188 at 21.

8